## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,
           Plaintiff

**FILED
SCRANTON**

VS.

DEC 0 7 2004   CRIMINAL NO. 1: CR-01-195-06

PER _____
    DEPUTY CLERK

HARVEY HOLLAND
        Defendant/Petitioner

## MOTION TO AMEND PETITION FILED
## UNDER 28 U.S.C. § 2255, PURSUANT TO
## RULES OF CIVIL PROCEDURE RULE 15, 28 U.S.C. AND
## RULES OF APPELLATE PROCEDURE
## RULE 27, 28 U.S.C.

**TO THE HONORABLE, WILLIAM W. CALDWELL, JUDGE, UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA:**

Defendant, Harvey Holland, petitioner, pro-se, respectfully moves to amend his 28 U.S.C. § 2555 petition which he filed, and represents:

1.    Petitioner was informed by this Honorable Court whether the issues incorporated were the only issues petitioner wanted heard. Petitioner had to wait until he received assistance in order to answer the court's inquiring on whether the petitioner had other issues.

2.    Enclosed there are four issues which petitioner respectfully asks this Honorable Court to amend to his original 2255 petition. **(Exhibit "A")**

**Wherefore**, it is respectfully requested that this Honorable Court amend the issues attached and review same with the original issues incorporated in petitioner's

original 2255 petition.


Respectfully submitted,


*Harvey Holland*
Harvey Holland
EP8162
1000 Follies Road
Dallas, PA 18612

# CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the

persons and in the manner indicated below which service satisfies the requirements of

Federal Rules of Appellate Procedure Rule 25(c)(d), 28 U.S.C.

## SERVICE BY FIRST CLASS MAIL

United States District Court for
the Middle District of Pennsylvania
Clerk of Court
Mary E. D'Andrea
U.S. Post Office and Courthouse
Scranton, PA 18501

Mr. Thomas A. Marino, Esquire
U.S. Attorney
William J. Nealon Federal Building
235 N. Washington Avenue
Scranton, PA 18501

Harvey Holland
EP8162
1000 Follies Road
Dallas, PA 18612

Dated:  December 3, 2004

# EXHIBIT "A"

## GROUND ONE

**The Trial Attorney Was Unconstitutionally Ineffective Due To His Failure To Object And Or Preserve Errors Committed By The Court Where The Judge Committed Errors By Allowing Two Unrecorded Ex Parte Sidebars, During Substantive And Supplementary Jury Charge (Instructions), In Violation Of 6th Amendment Confrontation Clause, 5th Amendment Due Process, Federal Rules Of Criminal Procedure §43, Right To Be Present And The Court Reporter Act 28 U.S.C. §753. Appellate Counsel Was Also Ineffective For His Failure To Raise Issues In Appeals Court.**

## THE FACTS

The claims set forth below are premised on two separate and distinct legal proceedings (1) "nonrecordation" of ex parte sidebar, occurring during the course of substantive jury charge (instructions) at the conclusion of trial, and (2) "nonrecordation" of ex parte sidebar, occurring during the course of the supplementary jury charge (instructions) subsequent to a jury note (question), while in deliberations. Were on both occasions the court (judge) allowed or committed a plethora of prejudicial errors, causing movant to be denied numerous constitutional protections (rights); trial counsel failed to object, and appellate counsel failed to investigate the records in order to include issues in appellate brief. Causing that movant has received unconstitutional ineffective assistance of counsel. **Sixth Amendment, United States Constitution.**

What follows is verbatim quotes from trial transcripts of proceeding number one (substantive jury charge, with errors related to first sidebar), then proceeding two relevant portion prior to actual (supplementary jury charge, with errors related to second sidebar); used herein to illustrate as a factual matter how and by what means prejudicial errors occurred such that are sufficiently egregious to warrant relief commensurate with **28 U.S.C. §2255.**

1

## TRANSCRIPTS OF PROCEEDINGS NUMBER ONE

At the conclusion of defense case at trial, the judge while delivering his substantive jury charge, paused in order to effect an inquiry to the adversarial parties, whereupon the following dialogue occurred. **"...is the government satisfied?"** The attorney for the government, Mr. Behe, replied: **"... may we approach on a matter?"**

The judge responded in the affirmative, but first repeated his question to the defense. The attorney, Mr. Timothy J. O'Connell representing movant made the following limited response to the judge's question: **"If we are waiting to approach, I will make my..."** Trial judge then stated: **"Fine."** **"Excuse us for just a moment."**

**(An off the record discussion was had at sidebar)**

## TRANSCRIPTS OF PROCEEDINGS NUMBER TWO

The following portion of quotations are for the limited purpose of providing complete context to movant's claim related to second sidebar conference and the existence thereof, as it was related to the deliberating jury's question regarding government's failure to prove element of controlled substance offenses **(weight)**, as charged in the indictment; this dialogue occurred **pre-sidebar**, the succeeding portion will be located in arguments supported by law that demonstrate **prejudice**.

**The jury has a question at 3:00 pm.**

**The Court:** **Folkes, we have the question that you asked about the 20 dollar bag and what it weighs; is that correct? And you indicate that you have no reference to determine weight, no direct testimony as to the specific weight amounts, et cetra.**

**There was no testimony on this point. I can agree with that. There was testimony, however, about quantity depending on what you believe, not necessarily weights. One person described some cocaine as may be the size of a baseball or orange or something I remember. That is the only testimony that would enable you to come to some conclusion about weight.**

**I did indicate to you I believe that fifty grams weighs an ounce and a half. You will have to determine, if you can, whether or not the government has proved**

2

beyond a reasonable doubt that fifty grams or more, or five or under five grams was distributed.

...We cannot supplement the record at this point with additional evidence. That is just something that we cannot provide for you. So all I can say is we can't answer that question because it isn't in the record, and we can't now add evidence that was not presented during the trial. So you will just have to do your best with the evidence that you heard. ...I think that is just something that everybody knows, and I thought I should convey to you.

MR. BEHE: Your Honor, before we retire, may we speak at sidebar?

THE COURT: Sure.

**(An off the record discussion was had at sidebar)**

This conclude quotes related to unrecorded ex parte sidebar proceedings one transcripts paged 547-48, and two at transcripts pages 2-3. (Jury Question) As noted above the entire proceeding cited was preceded by a jury note (question #4) wherein they informed the court they received no direct evidence or testimony as to specific weights; thus copies of relevant portions of proceedings 1 and 2, plus jury's note are provided at **[Exhibit One].**

Movant insist that there had to have been substantial legal discussions during the two sidebars, both serving as "critical stages of trial proceedings." The record bears out that there was no transparency as to complete contents or details of unrecorded conferences (an arbitrary effort), but what's apparent is the serious nature of subject matter at the <u>two</u> <u>sidebars</u>, as per judge's instructions afterwards; at the rubric for **prejudice** movant provides elaboration on this point jointly. Through inadvertence or otherwise the stenographer failed to participate or simply failed to transcribe the pertinent portions under complaint herein, such must be chargeable to the court. Those portions being; (1) **the attorney O'Connell's response to the judge's question, and (2) the two separate ex parte sidebar proceedings.** See **United States v. Workcuff, 422 F.2d 700, 701-02 (D.C. Cir. 1970).** Additionally there

3

was no efforts by movant's attorney to achieve the participation of movant in the sidebar proceedings, as it appears counsel merely acquiesced in the government's request. By doing so trial counsel failed to assert client's interest, making sure that the contentious issue which was the subject during the sidebars be made clear in the records; accordingly movant was all but present at those critical stages of trial.

## THE LAW

The errors committed at trial are divided into two parts, entirely for the purpose of conveying as to how, either in whole or in part, this court will find the violations to be in clear contravention of prevailing legal norms premised on constitutional and statutory laws of the United States.

The essence of legal claims made herein as to the first of the **two parts**, is movant's **right to be present at every stage of trial.** This right is guaranteed by way of "[t]he confrontation clause of the Sixth Amendment, the due process clause of the Fifth Amendment, and Federal Rules of Criminal Procedure 43." See **United States v. Brantly, 68 F.3d 1283, 1290-91 (11th Cir. 1995).**

Movant's right to be present at all stages of trial is even acknowledged by the likes of the late Mr. **Charles Alen Wright,** a leading authority in American jurisprudence, who provides ellucidation and treaties regarding federal rule **§43,** holding: **"[A] leading principle that pervades the entire law of criminal procedure is that after indictment found, nothing shall be done in the absence of prisoner"** at, **Alen Wright Fed.R.Cr. Proced. 43 §721, Vol #3B, 3rd Ed. 2004.** Also quoting the **United States Supreme Court at Lewis v. U.S., 1892, 132 S.Ct. 136, 137, 146 U.S. 370, 372, 36 L.Ed. 1011 (per Shiras, J.).**

Thus for the purpose of **Rule §43,** trial actually begins when the jury is selected, at the stage all the constitutional and statutory protections generally afforded by law must stand to intercede on movant's behalf. **The Virgin Island v. George, CA 3 1982, 690 F.2d 13.**

4

The government cannot be heard to contend that the failure to allow movant's physical presence at the two sidebars is somehow mitigated or cured by the presence of his trial attorney, nor will the government be able to achieve refuge in an often resorted claim that relies on availability of transcribed sidebar proceedings.

For starters, the right to be present at trial is distinct from movant's constitutionally mandated right to counsel, where the court has observed:

> "[A]lthough the presence of counsel is certainly a relevant factor to be considered in determining whether a defendant's absence was harmless, the right to be present at trial grounded in the confrontation clause and the due process clause is not a gossamer right inevitably swept away simply because a defendant is represented in his absence by counsel. The right to be present is distinct from the right to be represented by counsel, the right to be present would be hollow indeed if it was dependant upon the lack of representation by counsel, it could not be said that there was no reasonable possibility of prejudice and his conviction ... remanded for new trial." United States v. Novaton, CA 11th, 2001, 271 F.3d 968, 999-1000, certirorari denied 123 S.Ct. 193, 537 U.S. 850, 154 L.Ed.2d 80.

The Supreme Court has even gone so far as to recognize that in situations where the defendant is not actually confronting witnesses or evidence against him at trial, the right to be present is an indelible due process right, ruling: **"[T]o be present in his own person whenever his presence has a relation reasonably substantial to the fullness of his opportunity to defend against the charge... to the extent that a fair and just hearing would be thwarted by his absence..."** Kentucky v. Stincer, 482 U.S. 730 at 745, 107 S.Ct. at 105-106, 78 L.Ed. 674, 54 S.Ct. 330, 90 ALR 575 (1934).

Quite naturally it follows that the indelible due process right is violated, where as demonstrated through "transcript of proceedings number two," movant was neither present or allowed opportunity to review contents of discussions which occurred during the second sidebar proceeding, where thus far we are able to ascertain that the subject matter was related to an essential element of the offense, and material evidence, which by all accounts based on the records of the court, involved actual witness testimonies, related to the deliberating jury question as to **failure**

to put on evidence that demonstrate **the weight** of controlled substances, i.e., crack cocaine.

As to the second of the '**two parts**', the failure of trial court to assure transcription of discussions had at the above cited two separate sidebars, runs afoul of precedences provided by the judiciary and legislative proscriptions, which has long mandated that entire proceedings (including sidebars) be transcribed verbatim. **U.S. v. Preciado-Cordobas, 923 F.2d 159 (11th Cir. 1991), U.S. v. Rogers, 853 F.2d 249, cert. denied, 109 S.Ct. 375, 488 U.S. 946, 102 L.Ed.2d 364.** And of course legislative enactments known as the **Court Reporter Act, at 28 U.S.C. §753(b)** which declares: **"(b) Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to the regulations promulgated by the judicial conference and subject to the discretion and approval of the judge... ...Proceedings to be recorded under this section include (1) all proceedings in criminal cases held in open court;"**

The Court Reporter Act has long been cognizable in lower courts where there exist no disagreements as to its authority, holding that the "[C]ourt Reporter Act, 28 U.S.C. §753(b)(1994) requires that court reporters attend at each session of the court and record verbatim all proceedings in criminal cases had in open court. This requirement applies to bench conferences." See **United States v. Winstead, 74 F.3d 1313 (D.C. Cir. 1996)**.

**PREJUDICE**

Movant submits that issues raised herein remain distinguished as being unlike the more typical complaint of trial errors which demonstratively provides for a violation of either; (1) **the defendant's right to be present at proceeding in his criminal trial** or (2) **the trial court's violation of Court Reporter Act of 28 U.S.C. §753, where it failed to transcribe or record sidebars**.

The unique aspect of the two above mentioned constitutional errors, is that they

6

remain inextricably joined, only to occur or manifest at two separate jury instructions, i.e., substantive jury charge at the conclusion of trial, and the supplementary instruction administered in response to jury question (during deliberations), together serving to deny movant a fair trial, including an unobstructed pursuit of appeals and post conviction relief. **United States v. Huggins, 191 F.3d 523, 536 (4th Cir. 1999) cert. denied 529 U.S. 1112 (2000)** citing **Hardy v. United States, 375 U.S. 277, 279 (1964).**

The constitutional errors in their respective individual legal context at one time were considered egregious enough to be treated as structural in nature, requiring automatic reversal (presumed prejudice), i.e., ex parte sidebars, **Feliciano, 223 F.3d 102, 111-12 (2d Cir. 2000);** or even a per se reversal rule, i.e., "Court Reporter Act §753' Carrazano, 70 F.3d 1339, 1342 (D.C. Cir. 1995). In the face of prevailing law this court will find it objectively unreasonable for trial attorney to forego objections to unrecorded sidebar conferences, relying on previous judicial observations (for prejudice) made at, **U.S. v. Sierra, 981 F.2d 123, 127 [5-7] (3rd Cir. 1992),** where the Third Circuit held, "[T]he nonrecordation of some of the sidebar conferences presents a more difficult issue, we cannot accept the government's argument that the failure to record sidebars is less serious than the failure to record other portions of the trial, such as comments by the judge to the jury. The Court Reporter Act applies to all proceedings in open court, which include sidebar conferences. See **Milan, 910 F.2d at 1559-60; cf. United States v. Smith, 787 F.2d 111, 114 (3rd Cir. 1986)**(sidebar is integral part of trial). Instead unrecorded sidebars should be examined for prejudice much as are other missing transcripts. **See, e.g., United States v. Sneed, 527 F.2d 590, 591 (4th Cir. 1975)(per curiam)(no prejudice); Edwards v. United States, 374 F.2d 24, 26-27 (10th Cir. 1966)(same) cert. denied, 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed 120 (1967)."**

The relevant portion of trial transcripts at the substantive jury charge by way of verbatim quotes from page 548, immediately after first sidebar is cited below in

order to convey how and by what means the unrecorded ex parte conference is frought
with prejudicial errors such that causes the verdict reached at trial to be one that
this court cannot rely upon as having produced a just result.

### IMMEDIATELY AFTER SIDEBAR ONE

The Court:  **The government has asked me to indicate a matter concerning conspiracy
that I may not have mentioned before.  You should not put any special emphasis on these
brief sentences that I will read to you.  These must be considered along with the
lengthy charge that you have already had on conspiracy.  I think the point in this
charge is ... and I will mention it after I read it ... a person may become a member
of a conspiracy without full knowledge of all the details of the unlawful scheme or
the names and identities of all other alleged conspirators.  So if a defendant has an
understanding of the unlawful nature of a plan and knowingly and willfully joins in
that plan even on one occasion, that is sufficient to convict him for conspiracy even
though he had not participated before and even though he played only a minor role.**

[at page 548, lines 9-25, see, Exhibit Two]

Movant is unable to claim with any degree of certainty the substance of discussions
held at unrecorded ex parte, sidebars (conferences), hence what follows as related to
the first of two conferences, for the purpose of a prejudicial finding, is intended
to be void of speculation and conclusiveness seeking this court's focus on the legal
implications that iminate from the **"addition"** to jury charge, which trial judge merely
implies was among issues under discussion at sidebar number one.

A part from judge's statement that implied the addition to jury instruction was
due to government's request during sidebar.  What's missing is the **reason** for the
addition, explanation as to **relevance** in light of what had already been administered,
and the **cause**, or **why**, i.e., conspiracy language (supplemental).

(1)  The nature and context of the addition is inherently prejudicial, as it
allows the jury to enter into deliberations on the conspiracy count requiring a
reduced burden of proof for the government; particularly where the judge instructs

8

that a person may become a conspirator without full knowledge of the details of unlawful scheme, or that upon having understanding of details of unlawful nature of a plan, knowingly and willfully, joins it even if on one occasion, such is sufficient even if one had not participated previously. **United States v. Wilson, 133 F.3d 251 (4th Cir. 1997), United States v. Blackman, 839 F.2d 900 (2d Cir. 1988)(retroactive liability illegal in conspiracy).**

(2) Prejudicial error occurred when the actual offenses and elements charged by indictment versus that given in substantive jury instruction; which includes the mens rea scientor of intentionally and knowingly, other acts or elements of manufacturing, distributing, possession of 50 grams or more of crack cocaine.  Further where substantive offense also charges aiding and abetting.  But the supplemental charge omits, or fails to identify the object of conspiracy by using the noun '**scheme**' such is woefully inadequate and vague, for instructive analysis, see **United States v. Gallerano, 68 F.3d 611 (2d Cir. 1998).**  The similarities within  relevant drug counts including government's incorporation of substantive counts as **overt acts** in conspiracy count, could have caused the deliberating jury to interpret the supplemental charge as reason to conclude '**if he's guilty of conspiracy he's automatically guilty of substantive offense or vise versa."**

(3) Prejudicial error occurred where the judge's addition to the jury charge provides **mens rea scientor's** as knowingly and willfully, while the actual scientor provided at the conspiracy **Count V,** is **intentionally and knowingly,** the same for the substantive offenses at counts **1, 2, and 4,** used as overt acts (referenced and incorporated by conspiracy count), **U.S. v. Bancalari, 110 F.3d 1425 (9th Cir. 1997).**  The Third Circuit has long recognized the trial court's **failure to instruct** on scientor such as here [intentionally] to be plain error qualifying for relief.  See **United States v. Retos, 25 F.3d 1220, 1231-32 (3rd Cir. 1994).**

Hence the addition to jury charge by all accounts is prejudicial as it also contradicts clearly established law in the Third Circuit such that sets criteria for

9

the definition of conspiracy and the means which a jury can infer the existence of one. **United States v. Gibb, 190 F.3d 188, 197 (3rd Cir. 1998), U.S. v. Daniel Presler, 256 F.3d 144 (2001).**

The following quotes are meant in part to provide distinction from other aspects of prejudices that occurred in both substantive and supplementary jury charges, and respective ex parte sidebars. The **following** section (after second sidebar) needs highlighting in order to emphasize its additional aspect of prejudice, i.e., (where the court's advise to the jury exceeds scope of jury's question, and trial counsel recognizing the error but fails to follow through with appropriate comprehensive, cogent motion addressing the point: continuing at page 3, of jury question.

**(An off the record discussion was had at sidebar)**

The Court:  I am remined of some of the testimony that you heard, and I will review what I recall as being said...  ...But I know that there was reference to people bagging and preparing multiple ounces of cocaine at one time.  Somebody referred to a half a kilogram.  A kilogram is a thousand grams so if a kilo would be five hundred grams.  There was testimony along those lines, but that is for you to recall.

...Thank you.  You may continue.

**(The jury retired to deliberate at 3:07 pm)**

The Court:  Did counsel wish to place any objection on the record to my remarks?

Mr. O'Connell:  **For the record, I would like to note an objection that the court's response went beyond the scope of the jury's question.  And without reviewing my notes as to the testimony, I am not sure that it is necessarily accurate.  I am not saying that it is not accurate, but I preserve that argument.**

Mr. Boyle:  Your Honor, I would also like to join in that objection.

The Court:  **Fine.  We will be in recess.  Thank you.**  (Whereupon, the portion of transcript requested to be transcribed was concluded).  [Available at Exhibit Three].  Also see; Fed. R. Evid. at 103(b) Governing preservation of evidentiary objections; and **Fed. R. Crim. P. 30.** Governing preservation of error in court's charge.

10

Based on the above two portions of supplementary instructions (prior to and after second sidebar), there exist a litany of prejudicial errors all related to court's response to jury's question. Thus argument depicting prejudicial factors relevant on law, are to be found in both portions as they're inseparable when attempting to provide full context, purpose, and meaning to the second sidebar and related prejudices in the absence of record: **The prejudicial errors are as follows.**

(1)    The judge's supplemental instructions included analogy to that of "Cleenex box,' 'baseball' or 'Oranges,' in an effort to provide comparison (equate) to "**20 dollar bag and what it weighs,**" i.e., the drugs such amounted to an "**improper methodology**" for the purpose of determining amount of crack cocaine attributable to movant in either conspiracy or substantive offense; prejudice is inherent where possession, distribution, of any three above items is not a crime such that would support rational basis for analogy or whereby there could be any legal foundation to justify comparisons. **U.S. v. Mammino, 212 F.3d 835 (3rd Cir. 2000).**

(2)    The judge's supplemental 'reasonable doubt' instructions at **page 2,** had the effect of reducing government's burden of proof, where trial judge also admonished the jury that they could make a determination for guilt if they found a mere "**five grams;**" an offense not charged by the indictment. **See Beem v. McKune, 278 F.3d 1108 (10th Cir. 2002)**(citing U.S. Supreme Court, substantive due process, miscarriage of justice). All drug counts actually charges "**50 grams or more.**" The error herein created a structural defect. **See Arizona v. Fulminante, 499 U.S. 279, 307-10, 111 S.Ct. 1246, 113 L.Ed. 302 (1991).** Prejudicial showing for structural errors occurring as a result of unconstitutional amendment to the indictment not needed. **United States v. Roshko, 969 F.2d 1 (2d Cir. 1992).**

(3)    The judge's supplemental instructions failed to inform the jury that an "**individual finding**" for the purpose of movant's culpability in either substantive offenses or conspiracy count, as to weight of drugs attributable to him, especially since the jury heard testimony from witnesses that spoke of various drug quantities

11

attributed to **(A)** **Harvey** **Holland**, which included a time period outside the scope of the indictment, i.e., (1995), and **(B)** **Sean** **Anderson**, the deceased. **United States v. Tucker, 90 F.3d 1135 (6th Cir. 1996)**, U.S. v. Hansley, 54 F.3d 709 (11th Cir.) cert. denied. 516 U.S. 998 (1995), In Re Sealed Case, 108 F.3d 372 (D.C. Cir. 1997). Additionally the instruction while referring jury to witness testimony, failed to advise or consider reliability and credibility factors where some witnesses also abused drugs. **United States v. Lee, 68 F.3d 1267 (11th Cir. 1995)**.

(4)  The judge's supplemental instruction given at government's request immediately after second sidebar (page 4, jury question), where he sought to remind jury of testimony related to weight evidence in question. The reminders amounted to mere **"ipse dixit"** – Joiner, 522 U.S. 136 (1997)(for phrase), as he failed to extrapolate from any transcripts, in itself prejudicial error. **U.S. v. Caldwell, 88 F.3d 522 (8th Cir.), cert. denied, 520 U.S. 1222 (1997)**. The court (judge should have given a <u>yes</u> or <u>no</u> answer to a non-deadlocked jury question, rather than refer them to witness testimony off the whim, a failure to rely on accurate verbatim record. **United States v. Manning, 79 F.3d 212 (1st Cir.), cert. denied, 519 U.S. 853 (1996)**(prejudicial error).

(5)  The judge's supplemental instruction in response to jury's question where the judge acknowledged the government's failure to prove the essential element of weight, failed to direct the jury verdict for acquittal on related counts, but to the contrary the judge's referring jury to previous testimony without any specific guidance in the record, for individual finding, had the effect of directing a verdict against movant, inherently prejudicial, due process. **Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)**. It was plain error for the judge to submit counts of the indictment that relied on essential element of weight, to the jury for deliberation, where even during his substantive jury charge (page 550), the judge advised the jury ...."We didn't get any testimony about weight"...., i.e., weight of controlled substances. **See United States v. Golomb, 811 F.2d 787, 793 (2d Cir. 1987)**.

## LEGAL CAVEAT

### Effectiveness Of Counsel's Arguments Impaired

Movant was prejudiced when the court through its supplementary instruction omitted the scientor element of intentionally, and charged the element as to the weight of controlled substance offenses by informing jury for the purpose of its reasonable doubt findings, it only had to find defendant distributed or possessed 5 grams, instead of the charged amount of 50 grams or more. Trial counsel's effectiveness through arguments at trial were impaired, as a result of the sudden change in jury charge, occurring after defense counsel has long concluded its case. **United States v. Harvill, 501 F.2d 295 (1974)(another Rule 30 violation).**

\*   \*   \*   \*   \*   \*

It's critical to note with regards to prejudicial findings as related to both unrecorded ex parte sidebar conferences, and related supplementary instructions, with particular focus on that administered in response to jury's question, where there exist an additional departure from procedural norms (legal rules), designed to protect the accused from prejudicial errors, and to assure a fair trial.

That is through judicial gatekeeping, even in the absence of counsel's motion pursuant to **Fed. R. Crim. P. 30;** once the court becomes aware of the need or at the behest of either party. The court in the absence of jury should have bought to the attention of counsel on the record (transcribed) the full details of intended supplementary instruction, thus affording an opportunity for objections outside the hearing and view of the jury. See **Hamling v. United States, 1974, 94 S.Ct. 2887, 2916, 418 U.S. 87, 134, 41 L.Ed.2d 590 (per Rehnquist, J.), construing Fed. R. Crim. P. 30.** Also see **Fed. R. Civ. P. 51. "The rule is designed to avoid the subtle psychological pressures upon the jurors which would arise if they were to view and hear defense counsel in a posture of antagonism toward the judge."**

Therefore if the government had any objections to jury charge (as the record demonstrates on two separate occasions) the ensuing ex parte esidebars which resulted in substantial prejudice to movant was not the best legal forum to iron out those

13

those legal differences, such that involves multiple defendants (coconspirators) and
their respective liberty interest, this includes conflicting ideas on legal principles,
like that related to supplementary charge on conspiracy count of the indictment, or
the supplemental charge that goes to jury's question related to material evidence,
i.e., where the court attempts at referring jury to witness testimony without
consulting the record (weight question). All such is improper and in the absence
of record (nonrecordation **id.**, **at 127 [5-7], Sierra**) it's impossible to determine
the "posture" of trial counsel during related sidebar conferences.

Through judicial gatekeeping and its supervisory authority the court should
have ordered an **instruction objection conference**, cognizable in this court at **U.S.
v. Currens, CA 3d 1961, 290 F.2d 751**, the conference was warranted given the inherent
complications defined above, also see **Charles Alen Wright, 3d 2004, F.R. Cr. Pro.
30 §484**.

* * * * * *

Cumulatively or otherwise the foregoing errors at their enumerated points can
be best described as _judicial_ _error_ as per the instructional ambush, where the court
is required to inform in advance of its intended charge, such should be apparent in
the record. **See United States v. Gaskin, 849 F.2d 454 (9th Cir. 1988)**.

Relying on precedent in reaching a determination for prejudicial errors, this
court may consider the **"absence or presence of new counsel or the same counsel on
appeal"** as a significant factor, **id., at 981 F.2d 126 [3]** citing **(Antoine, 906
F.2d at 1381)**. At direct appeal movant was represented by different counsel from
trial attorney (Mr. O'Connell), that being attorney **Lemora M. Smith**, see page III,
**"Appeal Statement."**

An evidentiary hearing is necessary in order to complete a prejudicial
determination when habeas court is confronted with the foregoing type of issues
and errors under complaint. **See Burson v. Engle, 432 F.Supp. 929, 932 [6] 1977,
citing Alen Wright, Gypsom Co., 438 U.S. 422 (1978)** prejudice presumed.

14

Equally germane to silence of the record (§753 violation) is counsel's failure to be heard, prior to, during, or after sidebars where there exist no apparent effort to challenge the unrecorded nature of ex parte sidebars, or government's request, as part of the adversarial process, amounting to passivity and ineptitude. **Lindstadt v. Keane, 239 F.3d 191, 205 (2nd Cir. 2001)**, such lacking in argument during critical stages is tantamount to counsel's very absence. **Tippins v. Walker, 77 F.3d 682 (2nd Cir. 1996)**.

Therefore, trial counsel failed to preserve any of the foregone errors for direct appeal, where there is a likelihood the entire matter would have received appropriate relief. **Government of Virgin Island v. Forte, 865 F.2d 59 at 64 (4-5)(3rd Cir. 1989)**.

Wherefore, movant seeks vacature of sentence and conviction or whatever relief this court deems necessary.

### GROUND TWO

> **The Trial Attorney Was Unconstitutionally Ineffective Where The Government Relied Upon Coconspirators Guilty Pleas As Substantive Proof Of Movant's Complicity In Conspiracy Whereby, Counsel Failed To Object, Or Request A Limiting Instruction, In Violation Of Due Process Guaranteed, I.E., 5th Amendment, U.S.C. Movant Was Prejudiced And Appellate Counsel Was Unconstitutionally Ineffective For Failure To Raise Issue In Appeals Court.**

Movant hereby set forth below a number of quotes from a portion of trial transcripts which serves to demonstrate a number of substantive errors committed by the government in its presentation of evidence, the onus of which is to be shared with defense counsel for his failures to object, and or seek a limiting jury instruction.

### THE FACTS

The following represents opening arguments to the jury and court by the attorney for the government Mr. William A. Behe (A.U.S.A.), where he informs the jury of witnesses, who are coconspirators/codefendants of movant, charged in the indictment and has entered into plea agreements with the government (plead guilty):

**Pages 14-15, Lines 22-25, and 1-7,**

15

Line 22 - "You'll hear from witnesses who are codefendants who have pleading guilty, particularly Anthony Braxton who was also charged as conconspirator who has plead guilty, admitted his involvement with these defendants and is prepared to testify."

"Defendant Jeffrey Holland's girlfriend, the mother of his child, has plead guilty and is going to testify here against him as will others.  You heard the names, witness after witness who will come into court and testify about what they know about these individuals involved."  [End at line 7, page 15].

What follows is quotes from passages of transcript at direct examinations of both witnesses, conconspirators, in their respective orders Ms. Posey (page 173, lines 5-21, of trial transcripts) and Mr. Braxton  (page 221-223, line 4).

### Direct Examination (Ms. Posey)

Line 5 - "Ma' am, you were yourself charged for being involved in the drug trafficking activity that was going on here in Harrisburg involving Jeffrey and Harvey and Shawn Anderson and Braxton, is that correct?"

Line 9 - "Yes."

Line 10 - "And you have pled guilty herein this courtroom to a charge of what, using a telephone to promote drug trafficking?"

Line 13 - "Soliciting over the telephone."

Q.  "You face a potential term of imprisonment of up to four years, is that correct?"

A.  "Yes."

Q.  "You have been in jail for how long, ma'am?"

A.  "Almost a year."

Q.  "You are over at the Cumberland County prison, is that correct?"

A.  "Yes."  [end at page 173 line 21].

### Direct Examination (Mr. Braxton) page 221)

Line 20 -  Q.  "Was there a point in time when you were charged for your involvement in distributing drugs along with these defendants?"

16

A.  "Yes, I was in a conspiracy."

Q.  "There was a point in time where you were incarcerated in York County prison?"

(end at line 25)

A.  "Yes, I was from May 14th to December 26th."

Q.  "Of 2001?"

A.  "Yes."

Q.  "Had you plead guilty at that time?"

A.  "Had I plead guilty?"

Q.  "Yes."

A.  "Not at the time when I got the — did I?  No, not at the time when I got the letter, no."

Q.  "Have you since pled guilty?"

A.  "Yes, I have."

Q.  "You have signed a plea agreement obligating you to cooperate; is that correct?"

A.  "Yes, with truthful testimony."

Q.  "Now you are facing a maximum term of imprisonment of ten years is that correct?"

[continued on page 223, line 2]

A.  "Yes, I am."

Q.  "Pardon me?"

A.  "Yes, I am."

[line 4 pages 223]

Demonstratively, the foregoing quotations from direct examination of movant's alleged conconspirators, depicts an exacting effort on part of the A.U.S.A., who during opening statements to the jury promised to advance as evidence the coconspirators guilty pleas as substantive proof of [movant's] complicity in conspiracy.

17

## THE LAW

As claimed it was error for the A.U.S.A. Mr. Behe, to make reference to coconspirators guilty pleas as **substantive proof** of movant's complicity on conspiracy, whereby the jury could infer that the defendant (movant) too must be guilty. **U.S. v. Universal Rehabilitation Services Inc., 167 F.3d 171 (3rd Cir. 1999).**

Where case precedent on occasion has addressed this very legal scenario via state habeas petition pursuant to §2254, for due process violation under the 14th Amendment. It must follow that the appropriate constitutional amendment involved is the **5th Amendment U.S.C.** for due process violation occurring in federal trial court. **See Caldwell v. Miller, 790 F.2d 589** (federal liberty interest verses state).

Hence movant provides as the single precedent authority by which his case is reasonably analogous, causing that the current habeas court albeit, through §2255, may examine claim for errors and apply the "Strickland standard" for the purpose of effecting relief.

The Third Circuit Court of Appeals at its authority **Bisaccia v. Attorney General of State of N.J., 623 F.2d 307 (1980),** has long recognized the above mentioned errors to constitute a denial of fair trial in violation of due process guarantees; where it declared: "[F]rom the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If **A's** admission that he conspired with **B** is believed, it is pretty hard to avoid the conclusion that **B** must have conspired with **A.** This one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 **Wigmore Evidence §1171 et seq., (3d Ed. 1940) id.,** at 312. "[I]t is patently unfair to subject a defendant to criminal sanctions merely because his alleged coconspirator[s] has not elected to stand trial. In effect, the guilty plea evidence cannot be introduced because its relevance is far outweighed by its potential prejudicial impact upon the jurors **deliberations."** Id. at 311.

13

"[D]ue process of law, as a historical and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend "a sense of justice." **Rochin v. California, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952)." Id. at 311.**

Then further; "[I]t is well settled in this circuit that use of a coconspirators guilty plea as substantive proof of a defendants complicity in a conspiracy without cautionary instruction is not admissible as evidence. **United States v. Toner, 173 F.2d 140, 142 (3rd Cir. 1949)." Id. at 312.**

Therefore, the antecedent authorities in this circuit remains consistant with contemporary law in other jurisdictions, where a limiting instruction (caustionary instruction) is found to be a mitigating factor which can prevent or reduce the potential for prejudice to the accused (movant). **U.S. v. Ramirez, 973 F.2d 102 (2nd Cir. 1992).**

However courts have even found the above reasoning applicable as sufficient reason in order to reverse convictions in nonconspiracy situations, i.e., where the government used codefendants admission of guilt as substantive proof in order to secure conviction, see **U.S. v. Prawl, 168 F.3d 622 (2nd Cir. 1999).**

Thus it becomes absolutely unreasonable in the face of such historial authority which serves as foundation for current procedural norms, when trial counsel fails to object to the error, or seek a limiting instruction, in order to secure movant's liberty interest or advocate his constitutional guarantees. See **U.S. v. Pierce, 959 F.2d 1297 at 1304 (9, 10](5th Cir. 1992)(for limiting instructions and ineffective assistance of counsel).**

## PREJUDICE

As noted at **Bisaccia**, critical to this court's prejudicial finding is how the government's use of movant's coconspirators guilty pleas in evidence as substantive proof of his guilt, is its "impact" upon the jury particularly in relations to their

"deliberation" process.  **Id. at 311.**

It was during the course of its short deliberations that they jury actually submitted a note, as **question #2,** wherein they asked **"[C]an we see a copy of all plea agreements?"** the judge wrote back **"Yes."** (June 6th 2002).

That the jury having to receive in evidence during trial movant's coconspirators guilty pleas, then to be allowed additional ponderence on those pleas as proof of movant's guilt, while in deliberations unsupervised, was akin to listening to coconspirators twice, and further without any cautionary instructions.  Such a situation could have allowed the jury to give greater or disproportionate consideration to the guilty pleas as substantive proof of movant's guilt on all relevant controlled substance counts in the indictment (again no limiting instruction).  Furthermore, the court's in this type of legal scenario with regards to **jury's re-reading of [guilty pleas] during its deliberations** (obviously) while defendant is not present, should abstain from such a practice.  Particularly where the record does not demonstrate trial counsel's consent, and even then, the right could not be waived by counsel, i.e., in response to jury's note #2.  **See U.S. v. Felix-Rodriguez, CA 9th, 1994, 22 F.3d 964 (for instructive analysis).  See Exhibit Four, for copy of transcripts containing government's arguments (opening), testimony of coconspirators Ms. Posey, and Mr. Braxton, jury note, in support of arguments.**

Conclusion, should this court not be satisfied by way of a showing that errors are of constitutional dimension, (due process, effective assistance of counsel 5th, 6th U.S.C.A.) and that prejudice exist or must be presumed, the court must agree that an evidentiary hearing will be necessary in order to properly evaluate counsel's failure to object and seek a limiting instruction, see **Chapman v. California, 1967, 87 S.Ct. 824, 837, 386 U.S. 18, 42, 17 L.Ed.2d 705.  Gibbs, Prejudicial Error: Admission And Exclusions Of Evidence In The Federal Courts, 1957, 3 Will. L. Rev. 48, 67.**  Further at Vol 3B, **Charles A. Wright, Federal Practice & Procedure §855 (3rd Ed. 2004)** for prejudicial determinations.

20

Appellate counsel was also unconstitutionally ineffective **Sixth Amendment U.S.C.** for his failure to investigate the trial record, recognize errors, and raise them in the formal appeals brief or his failure to raise trial counsel's ineffectiveness in appeals court. **Lombard v. Lynough, 868 F.2d 1475 (5th Cir. 1989).**

Wherefore, movant seeks this court to enter an order for the vacature of conviction and or his sentence, otherwise to provide relief by whatever means this court deems necessary.

<u>GROUND THREE</u>

> **The Trial Attorney Was Unconstitutionally Ineffective For His Failure To Object To Errors And Seek Cautionary Instructions, When The Judge Committed Jury "<u>Verdict Coercion</u>," As Part Of Its Substantive, And Supplementary Jury Charge, In Violation Of Movant's Due Process Guarantees (5th Amendment U.S.C.), And Appellate Counsel Was Ineffective For His Failure To Raise In Its Entirety, Jury Verdict Coercion Question In The Court Of Appeals.**

The following represents an ineffective counsel claim as against both trial and appellate counsels **(6th U.S.C.A.)**, where counsel failed to object on the records, and seek cautionary instructions when the court committed trial errors by means of **jury verdict coercion** in its substantive and supplementary jury charges, i.e, **(1) threats and intimidation, (2) coercive language, (3) time** pressures, thereby causing the jury to render an expedited guilty verdict; a denial of movant's due process guarantees **(5th U.S.C.A.).**

**THE FACTS AND THE LAW**

That based on the gramatical syntax, and complete context of the judges advise to the jury, given in the following paragraph, taken from the "substantive jury charge" of the court, where the judge states: **"[A]t this point, you may now retire and begin your deliberations. I believe lunch will be served to you soon. We will be ready to receive your verdict <u>this</u> <u>afternoon</u> when you reach it. We will remain in session, please."** Id., at page 553, lines 15-18.

Although subtle it becomes clear that the judge's intentions at the very outset was to achieve a verdict that very day, such becomes obvious when combining the above

instruction with that given in the supplementary charge: "[N]aturally, we are hopeful that a verdict can be reached in this case, but we don't want anybody to reach a verdict just for the sake of reaching a verdict. If the case is not resolved today, it will have to be tried by another jury at a later time." See "Transcript of proceedings - Jury Question June 6, 2002, page 3, lines 4-8.

It is corrobative evidence, when combining the expression "this afternoon" (at substantive charge) with that of "resolved today" (at supplementary charge); that the judge sought to exert time pressures on the jury prior to and subsequent to first deliberations period. The court (judge), is forbidden by law from placing on the jury any explicit time constraints thereby seeking to induce a verdict more swiftly than the ends of justice will allow. **United States v. Diharce-Estrada, 526 F.2d 637, 640 (5th Cir. 1976).**

In the same paragraph there also exist a disingenuous act on part of the court where trial judge erroneously admonishes the jury through what can be interpreted as threat and intimidation, where the judge states "[I]f the case is not resolved today it will have to be tried by another jury at a later time." Id. at line 8.

This type of threat and intimidation can cause any single juror to feel as if he/she, is delaying the cause of justice, and thus vote with others in order to avert the pending collective punishment. **See Jenkins v. United States, 380 U.S. 445, 446 (1965).**

The idea or threat of replacement is a real fear for a juror, as it was previously acknowledged by the court when the judge informed the alternate jurors as follows: "[I] am sure it is somewhat disturbing to you that you have been here for four days, and now you are not going to get to deliberate with the other jurors, id. at page 552 (charge of the court) 3-6. Thus movant's claims herein is no mere speculation as replacement is viewed by the court objectively as "disturbing."[1]

---

1. All relevant quotes used herein are available at transcripts in Exhibit Four.

22

## PREJUDICE

By this point there should be no doubt as to whether the court's conduct resulted in jury verdict coercion, by way of threats and intimidation, coercive language, and time pressures (contraints). Nevertheless, the trial record bears out that trial counsel performed no actions indicative of objection to such judicial conduct in movant's liberty interest.

Counsel was also ineffective to the point of substantial prejudice toward movant by his failure to seek cautionary instructions, especially when the court used **"coercive languages"** on the jury as part of his supplementary charge. A cautionary instruction in light of the circumstances would have protected the trial proceedings from the spector or taint of verdict coercion, where at a minimum by law it is required to admonish (inform) the jury **"not to surrender their conscientiously held beliefs."** The defaulted cautionary instruction is particularly important where the judge's supplementary charge of which was related to **evidence**. **Lowenfield v. Phelps, 484 U.S. 231, 235 (1988)(internal quotations omitted).**

In light of all the above, including the least considered fact that the jury wasn't even deadlocked, which is known to trigger stearness or "Alen" type charges from judges after substantial delay at verdict. Reasonable jurist has agreed that the foregoing occurrence at trial smacks of jury verdict coercion. **Smalls v. Batista, 191 F.3d 272, 283 (2d Cir. 1999)** of which prejudice clearly exist.

## LEGAL CAVEAT

Another prejudicial factor pregnant in the judge's admonishment to the jury where he states **"If the case is not resolved today it will have to be tried by another jury at a later time,"** is that a double jeopardy claim would develop if the judge was to declare a mistrial prematurely. **Arizona v. Washington, 434 U.S. 497 (1978), Logan v. U.S., 144 U.S. 263 (1892).**

Could the trial court not have known this? The implications here is that if the jury had deliberated beyond its **prescribed time constraint (per the above**

23

quote), the court would have ordered a mistrial; however, movant would have been estopped (barred) from a second trial (per the above authorities), protected by double jeopardy law; hence a genuine liberty question.

Prejudice is presumed here, and both trial and appeals counsels were unconstitutionally ineffective respectively for both failure to object, preserve errors and raise issue in appeals court. **United States v.** Pierce, 959 F.2d 1297 at 1304 [9, 10](5th Cir. 1992), **Lombard v. Lynough,** 868 F.2d 1475 (5th Cir. 1989).

And further, trial counsels unprofessional errors as argued in all issues enumerated herein, including his omissions must be considered in light of totality of the circumstances. In other words, the prejudicial effect must be considered together. **Arrowood v. Clusen,** 732 F.2d 1364 (7th Cir. 1984), and **Goodwin v. Balkom,** 684 F.2d 794 (11th Cir. 1982).

### GROUND FOUR

> Did the Court erred when at sentencing it allowed
> the prosecutor to admit the murder of Jason Harrigan
> as a sentencing factor and when it presented testimony that
> were never presented to jury at trial, but were used
> to enhance the Petitioner's sentence?

A.    At sentencing the prosecutor was permitted to present the following at sentencing: :I believe that the evidence in this matter that was presented to the jury for surpassed the preponderance of the evidence standard. I think it was proven beyond a reasonable doubt that Mr. Holland, Mr. Anderson and Jeffrey Holland were involved in the ambush murder of Jason Harrigan." "Your Honor is uniquely in a position to decide whether or not the evidence was sufficient to include the homicide as part of a sentencing factor having witnessed or observed all of the witnesses the United States presented in this particular case." (N.T. 11/20/04, p. 4)

On this assertion by the prosecutor the court goes on to say, "I frankly could not understand in any way how mind, the evidence against all three of the people who were involved in this compelling." **(Id., at 7).**

The Court goes on to say, "certainly by a preponderance of the evidence that Harvey Holland was a participant in drug dealing, and that he and his brother conspired with Anderson and agreed to seek revenge or whatever it was against Mr. Harrigan." **(N.T. 11/20/02, p. 10)**

The prosecution dropped the charges against Petitioner, therefore, the judge had no reason to view such a claim at sentencing.

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." **Blakely v. Washington,** 124 S.Ct. 2531 (2004)

Your Honor goes on to present unfounded allegations by report from the probation department which information was not presented to the jury and were outside the scope of the indictment. **Blakely v. Washington,** supra.

At sentencing the Court relied upon the information provided by Mr. Vought the probation officer who report stated that Mark Hughes stated that Petitioner dealt drugs since 1986, which is outside the scope of the indictment and never presented to the jury.  **(Id., at p. 8)** The report goes on to say that Anthony Braxton stated in the pre-sentence report that Petitioner bragged about shooting an individual by the name of Stewart. **(Id., at p. 7-8).**

The statement of Shoranda Posey traveling with the Petitioner to New York to buy cocaine was never presented to the jury since no such statement ever existed at trial. **(N.T. 11/20/02, p. 8).**

Toyann Anderson's alleged testimony at trial that implicated the

Petitioner in the killing of Jason Harrigan was never presented to the jury as no testimony exist at trial. **(N.T. 11/20/02, p. 9).**

The above factors the Court used to sentenced to life in prison were never presented to the jury. **Blakely v. Washington,** supra.

**WHEREFORE,** the Court erred by addressing allegations that were never presented to the jury before sentencing the Petitioner.

Harvey Holland
EP8162
1000 Follies Road
Dallas, PA 18612

Charge of the Court

1    distribute or conspiracy to do the same, you will be asked to

2    determine, if you can, the amount of drugs with which each

3    was involved.

4         The government has the burden of proving drug

5    quantities by proof beyond a reasonable doubt as I have

6    already explained that term.  You must be unanimous in your

7    decision on this point.  Of course, the term quantity means

8    weight.

9         In determining the amount of drugs involved in

10   these crimes should you so find a defendant responsible, you

11   must indicate the amounts on a verdict form that I will

12   supply to you.  And you will be asked to determine beyond a

13   reasonable doubt the quantity involved in the particular

14   count.

15        The quantity of cocaine categories that we deal

16   with in these cases are fifty grams or more, five grams or

17   more but less than fifty grams, or less than five grams.

18   There are three categories that you can fit into there.

19        That includes the substance of my Charge.

20   Gentlemen, is the government satisfied?

21        MR. BEHE:  Your Honor, may we approach on a

22   matter?

23        THE COURT:  Yes.  Sure.

24        THE COURT:  Is the defense satisfied?  Let me ask

25   that question.

x-1

548

Charge of the Court

1    MR. O'CONNELL:  If we are waiting to approach, I

2    will make my --

3    THE COURT:  Fine.  Excuse us for just a moment.

4    (An off-the-record discussion was had at sidebar.)

5    THE COURT:  I have asked my Courtroom Deputy to

6    pass out the verdict forms.  I would appreciate if you put

7    them down for a minute because we are going to get to them in

8    just a second, but I do want to say something in addition.

9    The government has asked me to indicate a matter

10   concerning conspiracy that I may not have mentioned before.

11   You should not put any special emphasis on these brief

12   sentences that I will read to you.  These must be considered

13   along with the lengthy Charge that you have already had on

14   conspiracy.

15   I think the point in this Charge is -- and I will

16   mention it after I read it -- a person may become a member of

17   a conspiracy without full knowledge of all of the details of

18   the unlawful scheme or the names and identities of all the

19   other alleged conspirators.

20   So if a defendant has an understanding of the

21   unlawful nature of a plan and knowingly and willfully joins

22   in that plan even on one occasion, that is sufficient to

23   convict him for conspiracy even though he had not

24   participated before and even though he played only a minor

25   role.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
UNITED STATES OF AMERICA      :
                              :
            v.                :
JEFFREY HOLLAND and           : 1:01-CR-195-02
HARVEY HOLLAND,               : 1:01-CR-195-06
            Defendants        :
```

TRANSCRIPT OF PROCEEDINGS

JURY QUESTION

```
BEFORE:  HON. WILLIAM W. CALDWELL, Judge

DATE:    June 6, 2002

PLACE:   Courtroom Number One
         Federal Building
         Harrisburg, Pennsylvania
```

COUNSEL PRESENT:
WILLIAM A. BEHE, Assistant United States Attorney
    For - United States of America

TIMOTHY O'CONNELL, Esquire
    For - Defendant Jeffrey Holland

DENNIS BOYLE, Esquire
    For - Defendant Harvey Holland

Vicki L. Fox, RMR
Official Reporter

2

1              ( The jury has a question at 3:00 PM.).

2              THE COURT:  Folks, we have the question that you

3      asked about the 20 dollar bag and what it weighs; is that

4      correct?  And you indicate that you have no reference to

5      determine weight, no direct testimony as to the specific

6      weight amounts, etcetera.

7              There was no testimony on this point.  I can agree

8      with that.  There was testimony, however, about quantity

9      depending on what you believe, not necessarily weights)  One

10     person described something as big as a box of Kleenex.

11     Another person described some cocaine as maybe the size of a

12     baseball or orange or something I remember.  That is the only

13     testimony that would enable you to come to some conclusion

14     about weight.

15             I did indicate to you I believe that fifty grams

16     weighs an ounce and a half.  You will have to determine, if

17     you can, whether or not the government has proved beyond a

18     reasonable doubt that fifty grams or more, or five or under

19     five grams was distributed.

20             If you find that it was distributed, there was no

21     testimony as to what a bag -- a twenty dollar bag weighs.  We

22     cannot supplement the record at this point with additional

23     evidence.  That is just something that we cannot provide for

24     you.

25             So all I can say is we can't answer that question

3

1    because it isn't in the record, and we can't now add evidence

2    that was not presented during the trial.  So you will just

3    have to do your best with the evidence that you heard.

4              Naturally, we are hopeful that a verdict can be

5    reached in this case, but we don't want anybody to reach a

6    verdict just for the sake of reaching a verdict.  If the case

7    is not resolved today, it will have to be tried by another

8    jury at a later time.

9              That is no reason for you not to stick by your

10   guns if you can't resolve the case, but that is what would

11   happen if we don't arrive at a verdict.  I don't want to

12   let -- don't let me influence you in making a decision for

13   that reason.  I think that is just something that everybody

14   knows, and I thought I should convey to you.

15             That is as much as we can do I think so we will

16   ask you to retire unless you have further questions or

17   comments at this point.

18             MR. BEHE:  Your Honor, before we retire, may we

19   speak at sidebar?

20             THE COURT:  Sure.

21             (An off-the-record discussion was had at sidebar.)

22             THE COURT:  I am reminded of some of the testimony

23   that you heard, and I will review what I recall as being

24   said.  But when I do, I do not want you to have the

25   impression that I am crediting that testimony.  That is for

JURY QUESTION # 4

1: CR-01-195-02 + 06

#4

How much Crack (weight)
is in a $20.00 bag?

**FILED**
HARRISBURG, PA

JUN 6 2002

MARY L. D'ANDREA, CLERK
Per _____

We have no reference to
determine weight. No direct
testimony/evidence as to specific
weight, amounts, etc.

Charge of the Court

1          There was a lot of -- there was testimony about

2   this substance crack cocaine. And it was described. Of

3   course, we didn't get any testimony about weight and so forth

4   and so on.  But just for your information, I can tell you --

5   and I think that counsel agrees with this -- that fifty grams

6   of cocaine weighs approximately one and three quarter

7   ounces.  It does not weigh much.

8          Five grams weighs .175 of an ounce or less than

9   one-fifth of an ounce.  And one gram weighs .035, thirty-five

10  one hundredths of an ounce.  There is not much weight there

11  either.  The fifty grams is one and three quarter ounces, and

12  the other two weights that are shown there, of course, are

13  considerably less than that.

14         Of the Jeffrey Holland form, Count 3 asks on the

15  charge of unlawfully using a firearm in furtherance of a drug

16  trafficking crime, that is the unlawful distribution of crack

17  cocaine, what is your verdict?  The note there is to assist

18  you.  This count is based on the testimony of Adrienne

19  Stewart who testified that she contacted Jeffrey Holland and

20  arranged to exchange a gun that she had for crack and I

21  believe she said for money.  I think that -- according to her

22  testimony -- that transaction occurred.  So that is what

23  Count 3 is there.

24         Count 4 on both verdict forms deal with the death

25  of Jason Harrigan.  They ask on the charge of causing the

X-1.

Charge of the Court

1    MR. O'CONNELL:  If we are waiting to approach, I

2    will make my --

3    THE COURT:  Fine.  Excuse us for just a moment.

4    (An off-the-record discussion was had at sidebar.)

5    THE COURT:  I have asked my Courtroom Deputy to

6    pass out the verdict forms.  I would appreciate if you put

7    them down for a minute because we are going to get to them in

8    just a second, but I do want to say something in addition.

9    The government has asked me to indicate a matter

10   concerning conspiracy that I may not have mentioned before.

11   You should not put any special emphasis on these brief

12   sentences that I will read to you.  These must be considered

13   along with the lengthy Charge that you have already had on

14   conspiracy.

15   I think the point in this Charge is -- and I will

16   mention it after I read it -- a person may become a member of

17   a conspiracy without full knowledge of all of the details of

18   the unlawful scheme or the names and identities of all the

19   other alleged conspirators.

20   So if a defendant has an understanding of the

21   unlawful nature of a plan and knowingly and willfully joins

22   in that plan even on one occasion, that is sufficient to

23   convict him for conspiracy even though he had not

24   participated before and even though he played only a minor

25   role.

1    because it isn't in the record, and we can't now add evidence

2    that was not presented during the trial.  So you will just

3    have to do your best with the evidence that you heard.

4           Naturally, we are hopeful that a verdict can be

5    reached in this case, but we don't want anybody to reach a

6    verdict just for the sake of reaching a verdict.  If the case

7    is not resolved today, it will have to be tried by another

8    jury at a later time.

9           That is no reason for you not to stick by your

10    guns if you can't resolve the case, but that is what would

11    happen if we don't arrive at a verdict.  I don't want to

12    let -- don't let me influence you in making a decision for

13    that reason.  I think that is just something that everybody

14    knows, and I thought I should convey to you.

15           That is as much as we can do I think so we will

16    ask you to retire unless you have further questions or

17    comments at this point.

18           MR. BEHE:  Your Honor, before we retire, may we

19    speak at sidebar?

20           THE COURT:  Sure.

21           (An off-the-record discussion was had at sidebar.)

22           THE COURT:  I am reminded of some of the testimony

23    that you heard, and I will review what I recall as being

24    said.  But when I do, I do not want you to have the

25    impression that I am crediting that testimony.  That is for

X-3

14

1    Because as the investigators stepped back

2    and tried to determine who committed this horrible

3    crime in Susquehanna Township, they tried to think,

4    who would hate somebody so much or have so much

5    against an individual that it would take three

6    individuals to fire 25 rounds to try and kill someone?

7    And that took them to the drug scene.

8    And you are going to hear, I submit to you,

9    testimony about a world that you just can't imagine

10   exists and goes on every day in the community under --

11   or in front of our eyes, in the different areas where

12   we live.  You may read about it, but you're going to

13   hear about it from the witnesses who know these two

14   defendants, who know Shawn Anderson.

15   And we'll talk about their drug dealings

16   over several years, trips to New York to pick up crack

17   cocaine from a Hispanic individual that they bring

18   back for distribution, individuals who bought directly

19   from Defendant Jeffrey Holland here multiple times

20   over the period of the time charged in this indictment

21   for these individuals.

22   You'll hear from witnesses who are

23   co-defendants who have pled guilty, particularly

24   Anthony Braxton, who was also charged as a

25   co-conspirator who has pled guilty, admitted his

1     involvement with these defendants and is prepared to

2     testify.  Defendant Jeffrey Holland's girlfriend, the

3     mother of his child, has pled guilty and is going to

4     testify here against him, as will others.  You heard

5     the names, witness after witness who will come into

6     court and testify about what they know about these

7     individuals involved.

8           I submit to you when you hear the evidence

9     about the drug trafficking, what you'll see is that

10    Jeffrey Holland and Shawn Anderson were pretty much

11    running the show.  They were moving a lot of crack

12    cocaine, multiple-ounce quantities at particular

13    periods of time, over a substantial period of time,

14    possessing firearms during this period of time.

15          As a matter of fact, one witness is going to

16    come in and testify about her dealings with Jeffrey

17    Holland and Shawn Anderson, how she traded sex for

18    crack cocaine and on occasions would buy the crack

19    cocaine and how she traded a firearm to this defendant

20    in exchange for money and crack cocaine.  Others will

21    testify similarly.  Kechia Holmes will come in and

22    testify how she also, as a crack cocaine addict, found

23    herself not only buying crack cocaine from this

24    defendant, but exchanging sex for crack cocaine, as

25    well.

Posey - Direct

had to say?

A       He was just like I fucked up.  He was saying that
Mr. Harrigan would still be alive if he hadn't tried to kill
his uncle.

Q       Ma'am, you were yourself charged for being involved in
the drug trafficking activity that was going on here in
Harrisburg involving Jeffrey and Harvey and Shawn Anderson
and Braxton; is that correct?

A       Yes.

Q       And you have pled guilty here in this courtroom to a
charge of what, using a telephone to promote drug
trafficking?

A       Soliciting over the telephone.

Q       You face a potential term of imprisonment of up to four
years; is that correct?

A       Yes.

Q       You have been in jail for how long, ma'am?

A       Almost a year.

Q       You are over at the Cumberland County Prison; is that
correct?

A       Yes.

Q       While you were at the Cumberland County Prison, do you
recall receiving a letter that was sent to you by the
defendant Jeffrey Holland?

A       I never received the letter.  It was interfered.

4.

Braxton - Direct

1    girlfriend's house and was telling him about the argument me

2    and him had had.

3            At the time, Sharonda had put Jeffrey out of the

4    apartment.  And in the course of helping him get out faster,

5    she said hurry up and get the F out of my house before I call

6    the Police and tell them you killed the boy -- that you

7    murdered the boy at Camelot.

8            So in return, I am standing there talking to him.

9    I said oh, so he was wasn't lying about that.  Harvey Holland

10   says yeah, like we sat there and killed that boy.  He sits

11   there and tells her everything that we do as if he tells his

12   girlfriend everything that happens.  She wouldn't have known

13   if he hadn't told her.

14   Q    Did Harvey Holland give you any of the details about

15   what happened?

16   A    No.  Just except that when the guy pulled up, when he

17   showed up, they just shot him.  They shot him up.

18   Q    Now do you have a nickname of Sal?

19   A    Yes, I do.

20   Q    Was there a point in time when you were charged for

21   your involvement in distributing drugs along with these

22   defendants?

23   A    Yes, I was in a conspiracy.

24   Q    There was a point in time where you were incarcerated

25   in York County Prison?

Braxton - Direct

1    A    Yes, I was from May 14th to December 26th, yes,

2    December 26th.

3    Q    Of 2001?

4    A    Yes.

5    Q    While you were there, did you receive anything in the

6    mail like a letter?

7    A    I received a letter that was addressed to me that

8    stated I'm not -- I can't recite the letter word for word,

9    but things like just in case you didn't know, they're going

10   to use you until you can't be used no more.  You're a rat.

11   Why don't I shut the F up and stop running my mouth?  And

12   various things to that effect in reference to the case of

13   what I should not be talking about or discussing with the

14   federal agents.

15   Q    Had you plead guilty at that time?

16   A    Had I pled guilty?

17   Q    Yes.

18   A    Not at the time when I got the -- did I?  No, not at

19   the time when I got the letter, no.

20   Q    Have you since pled guilty?

21   A    Yes, I have.

22   Q    You have signed a plea agreement obligating you to

23   cooperate; is that correct?

24   A    Yes, with truthful testimony.

25   Q    Now you are facing a maximum term of imprisonment of

223

Braxton - Direct

1    ten years; is that correct?

2    A    Yes, I am.

3    Q    Pardon me?

4    A    Yes, I am.

5    Q    That letter that you received, was it signed; do you

6    remember?

7    A    It wasn't signed.

8    Q    How about the upper left-hand corner of the envelope,

9    did it have the name of an individual on it?

10   A    Waleed Thomas.

11   Q    Do you know that person?

12   A    I know him, yes.  I didn't know at the time who he was,

13   but I know who he is now because of various names.

14   Q    At the time you received the letter, you didn't know

15   him or know of him?

16   A    At the time because of the name, I didn't know the name

17   at first.  I didn't know the name.

18   Q    Have you in reading that letter heard any of these

19   defendants use any of those expressions?

20   A    That's the expression that I heard him use.  Just in

21   case you didn't know, that is the expression that Jeffrey

22   Holland uses often.

23   Q    Who was that?

24   A    Jeffrey Holland uses it often.

25   Q    Which is what?

-Y QUESTIO  #-2                        CR 01-145-02 +Q

#2

Can we see a copy of
all plea agreements?

Yes!

FILED
HARRISBURG, PA

JUN 6 2002

MARY E. D'ANDREA, CLERK
Per _____

K-4.

December 3, 2004

United States District Court for
the Middle District of Pennsylvania
Clerk of Court
Mary E. D'Andrea
U.S. Post Office and Courthouse
Scranton, PA 18501

RE:  **UNITED STATES OF AMERICA V. HARVEY HOLLAND**
     **No. 1: CR-01-195-06**

Dear Clerk:

Respectfully enclosed you will find an original and three copies of Motions to Amend my original 2255 petition filed with your Honorable Court.

I am now asking this court to recognize that I am applying the prisoner's mailbox rule pursuant to **Houston v. Lack**, 487 U.S. 266, 108 S.Ct. 2379 (1988). A copy of same has been forwarded to the United States Attorney by first class mail.

In advance, thank you for your time in this matter.

Sincerely,

*Harvey Holland*
Harvey Holland
EP8162
1000 Follies Road
Dallas, PA 18612



From: Mr. Harvey Holland
EP 8162
1000 Follies RD
Dallas PA 18612

LABEL107R, OCT 1997

RECEIVED
SCRANTON
DEC 07 2004
MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

United States District
The Middle District