IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,            :
     Plaintiff

                           :

        vs.                         :    CRIMINAL NO.  1:CR-01-195-06
                             CIVIL NO.     1:CV-04-2277
                           :

HARVEY HOLLAND,
     Defendant                   :

**FILED**
HARRISBURG, PA

DEC 0 7 2005

MARY E. D'ANDREA, CLERK
Per _____
            Deputy Clerk

M E M O R A N D U M

I.    Introduction

       The Defendant, Harvey Holland, filed a motion to vacate
his sentence pursuant to 28 U.S.C. § 2255.  In a memorandum and
order dated February 18, 2005, we denied three of his claims and
scheduled a hearing to address the remaining claims.  A hearing
was held on June 22, 2005.  This memorandum addresses the
remainder of the Defendant's claims.


II.   Background

       On June 6, 2002, following a jury trial, the Defendant
was convicted of distribution and possession with intent to
distribute fifty grams or more of crack cocaine in violation of 21
U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II) and conspiracy to
distribute and possess with the intent to distribute fifty grams
of more of crack cocaine in violation of 21 U.S.C. § 846 (Count
V).  The Defendant was sentenced to concurrent terms of life

imprisonment on both counts[1], five years supervised release on all counts, an assessment of $200, and a fine in the amount of $4000. Holland had also been charged with the murder of Jason Harrigan. However, the jury was unable to reach a verdict on that count and a mistrial was entered at the request of the Government.

Holland appealed his conviction. The Defendant's appeal was denied by the Third Circuit on September 30, 2003. *United States v. Holland*, 76 Fed. Appx. 452 (3d Cir. 2003)(*Holland I*). Holland petitioned for certiorari to the United States Supreme Court and on January 12, 2004, certiorari was denied. *Holland v. United States*, 540 U.S. 1135, 124 S. Ct. 1114, 157 L. Ed. 2d 942 (2004). On October 18, 2004, the Defendant initiated these § 2255 proceedings pro se. In response to our order under *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), he moved to amend his motion. We allowed him to amend and directed the Government to file a response. The Government requested a hearing in order to fully address the motion. In our February 18, 2005 order, we addressed several of the Defendant's claims[2], appointed counsel for the Defendant, and scheduled a hearing on the following claims: (1) that counsel was ineffective for failing to conduct a pre-trial investigation; (2) that counsel was ineffective for failing to interview, investigate, and cross-examine witnesses;

---

[1] The sentence for these counts ran consecutive to sentences imposed in Dauphin County Court.

[2] We addressed claims five, nine, and ten.

2

(3) that counsel was ineffective for failing to investigate the pre-sentence report to correct mis-statements of fact; (4) that the trial court abused its discretion at sentencing by assuming the truthfulness of statements made at sentencing and that counsel was ineffective for failing to address these inconsistencies; (6) that counsel was ineffective for failure to inform the Defendant of a possible plea bargain; (7) that counsel was ineffective at trial and on appeal for failing to object to errors made by the court when charging the jury, including the failure of the court to properly record sidebars; and (8) that counsel was ineffective at trial and on appeal for failing to object to the Government's use of co-conspirators' guilty pleas as substantive evidence of the Defendant's guilt.

A hearing was held on June 22, 2005. The parties have filed post-trial briefs and the remainder of Defendant's claims are now ripe for disposition.


III.  Ineffective assistance of counsel

The majority of Holland's claims allege ineffective assistance of counsel. These claims are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* held that an ineffective assistance of counsel claim requires the petitioner to show: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance

3

prejudiced the defense. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064. The reasonableness of counsel's conduct must be judged in light of the facts of the particular case at the time of the event. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. In analyzing that performance, the court must make every effort "to eliminate the distorting effects of hindsight," and determine whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Once it is found that counsel's performance was deficient, the court must determine if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

A.  Pre-trial investigation

The Defendant's first claim is that trial counsel was ineffective for failing to conduct a pre-trial investigation. Specifically, Holland argues that had counsel conducted a thorough pre-trial investigation, he would have informed the jury that the Defendant was incarcerated during the majority of the drug conspiracy.

4

The indictment charged Holland with conspiracy to distribute and possess with the intent to distribute fifty grams or more of crack cocaine and alleged that the conspiracy began on or about January 1, 1997 and continued through the end of April 2001. The Defendant was incarcerated in New Jersey from July 15, 1997 until July 20, 1998. (Doc. 337, Hearing Tr., Def. Ex. 1). He further asserts that he was arrested on September 12, 2000, and held until his trial. However, the Defendant's pre-sentence report indicates that he was arrested on September 15, 2000, September 24, 2000, January 4, 2001, February 21, 2001, and February 28, 2001, for various offenses committed during those months. As a result, we cannot accept Holland's assertion that he was continually incarcerated during the later part of the conspiracy.

At the hearing, Defendant's trial counsel testified that although he was aware that Holland was incarcerated for certain periods during the drug conspiracy, he did not want to present testimony to the jury about burglaries and robberies because of the murder charge. (Doc. 337, Hearing Tr. p. 29). He feared that the jury may infer that those types of crimes were crimes of violence and conclude that violence was consistent with Holland's character. (Id.). He also testified that the evidence presented at trial was not inconsistent with the theory that even though the Defendant was incarcerated at some point during the conspiracy, he still participated. (Id. at 29-30). Further, since Holland was

5

not going to testify, counsel's strategy was not to tell the jury about the previous convictions. (*Id.* at 30-1).

The Defendant was incarcerated for a year at the beginning of the conspiracy and then intermittently after September 12, 2000. However, for a majority of the conspiracy, he was not in prison. We fail to see what benefit he would have derived from the presentation of an imperfect alibi to the jury. Given that Holland was on trial for not only a drug conspiracy, but also a murder, it was a reasonable tactical decision for trial counsel to refrain from entering evidence that tended to show the Defendant's propensity for violence.

B. <u>Witnesses</u>

Holland's next claim is that trial counsel was ineffective for failing to interview and investigate potential witnesses and for failing to cross-examine witnesses at trial. Specifically, the Defendant contends that counsel should have cross-examined Angela Jackson, Danny Hawkins, and Toyann Anderson. Counsel's trial strategy was not to cross-examine a witness if they did not identify Holland as a member of the drug conspiracy. (Doc. 337, Hearing Tr. pp. 31-2). He did not want to give the prosecutor the opportunity to elicit damaging testimony on re-direct by giving witnesses an opportunity to recall incidents that involved Holland. (*Id.* at 32).

Angela Jackson, a seventeen year-old girl, testified that Holland had told her that he had killed "someone." (Doc. 267, Trial Tr. p. 265). The Defendant requested that counsel question her and was concerned when counsel moved away from him during her testimony. (Doc. 337, Hearing Tr. pp. 11-2). Trial counsel testified that Jackson had not previously been disclosed as a witness and that the trial was the first time he had heard her testimony. (*Id.* at 33). Counsel felt that Jackson's testimony was out of place as it lacked foundation and context. (*Id.*). Specifically, Jackson did not mention the Camelot Village Apartments, where the murder with which Holland was charged occurred, or who Holland had allegedly killed. (*Id.*). Counsel testified that he moved away from his client during Jackson's testimony because Holland became animated and he did not want the jury to give her testimony more weight because of the Defendant's reaction. (*Id.* at 34). He made the decision not to cross-examine her because he did not want to give her an opportunity to provide the jury with more details or context. (*Id.*). Even if we assume that trial counsel was deficient in failing to cross-examine Ms. Jackson, we cannot find that the Defendant suffered prejudice as a result of her testimony. He was not convicted of murdering Harrigan.

We further find that counsel's decision not to cross-examine Hawkins or Anderson was reasonable. While the attorney for the Defendant's co-defendant may have mention Holland's name

7

in a question to Hawkins, Hawkins did not testify that he
purchased drugs from the Defendant.  His testimony focused on
Holland's co-defendant.  Anderson's testimony also focused on
Holland's co-defendant.  Her testimony regarding the Defendant was
that on one trip to New York, Holland was present.  While these
trips were for the purpose of obtaining drugs, Anderson only
mentioned that he was present and provided no other testimony
regarding Holland's involvement in the New York trips.  Thus, it
was reasonable for trial counsel to avoid calling attention to
Holland or to offer the witnesses the opportunity to provide
testimony regarding the Defendant's involvement in the conspiracy.

    C.  Pre-sentence report

        The Defendant maintains that trial counsel was
ineffective for failing to correct an error made by the probation
officer in the pre-sentence report.  Specifically, he argues that
in the pre-sentence report, the probation officer incorrectly
stated that Holland's school records from the Elwyn Institute
indicated that he functioned in the borderline range of
intelligence.  Holland maintains that his school records indicated
the he functioned in the borderline range of retardation and that
the probation officer substituted the word intelligence for the
word retardation.  He contends that counsel was ineffective for
failing to investigate the information cited by the probation
officer.  At the § 2255 hearing, trial counsel testified that he

reviewed the pre-sentence report with Holland and, after discussing the report with the Defendant, objected to the drug quantities and holding the Defendant responsible for the murder of Jason Harrigan. (Doc. 337, Hearing Tr. pp. 34-5).

A review of the Elwyn Institute records submitted by the Defendant shows that staff at the institute referred to Holland's functional level as either within the borderline range of retardation or within the borderline range of intelligence. (Doc. 337, Hearing Tr., Def. Ex. 2). There does not appear to be any difference between the classifications, other than word choice. Thus, the probation officer did not substitute words as alleged by the Defendant and trial counsel was not ineffective.

The Defendant also maintains that counsel was ineffective for failing to correct other mis-statements in the pre-sentence report and that we abused our discretion in relying on the mis-statements at sentencing.[3] First, the petitioner objects to the presence of uncharged acts in his pre-sentence report. Specifically, he argues that the court could not rely on the statements in the pre-sentence report regarding an uncharged shooting and uncharged drug activity. He also contends that the court mis-stated testimony during the sentencing hearing.

---

[3] Holland is not raising a claim under *United States v. Booker*, 543 U.S. 220, 125, S. Ct. 738, 160 L. Ed. 2d 621 (2005), in this instance. Instead, he is questioning the reliability of the information used, not whether the information was presented to a jury.

"[I]nformation used as a basis for sentencing under the Guidelines must have sufficient indicia of reliability to support its probable accuracy." *United States v. Warren*, 186 F.3d 358, 365 (3d Cir. 1999)(*quoting United States v. Miele*, 989 F.2d 659, 664 (3d Cir.1993))(internal quotations omitted). Thus, so long as the information is reliable, a district court can consider a defendant's "background character, and conduct" at sentencing as well as prior criminal activity. *Id.* at 364-5. This reliability standard "should be applied rigorously." *Id.* at 365.

Holland argues that the court could not rely upon the sworn testimony of Anthony Braxton that the Defendant had bragged to him about shooting an individual named Ernie Stewart. He further contends that reliance on the testimony of Mark Hughes regarding the Defendant's involvement in selling drugs in 1986 is in error because the year is outside the indictment. However, as noted above, so long as the information is sufficiently reliable, the court can rely upon it at sentencing.

At sentencing we did rely upon Braxton and Hughes' testimony in coming to the conclusion that a preponderance of the evidence existed to hold the Defendant responsible for Harrigan's murder. (Doc. 272, Sentencing Tr. pp. 7-8). The testimony of both witnesses was given under oath at trial and in composing the pre-sentence report, the probation officer confirmed that the Stewart shooting took place. The Defendant has provided no evidence to show that the testimony of these two men is

10

unreliable.  As such, we cannot find that is was error for us to rely upon the information at sentencing or that counsel was ineffective for failing to object to it.

The Defendant also maintains that we mis-stated certain facts at sentencing and that we could not use those mis-statements to determine his sentence.  We relied on the following evidence in determining that a preponderance of the evidence existed to hold Holland responsible for Harrigan's murder: (1) Braxton's testimony regarding the Stewart murder; (2) Hughes testimony regarding drug activity beginning in 1986; (3) Hughes testimony that at some point in 2000 the Defendant robbed and shot another dealer; (4) Jamine Jackson's testimony that Holland was known to be violent and an enforcer; (5) Sharonda Posey's testimony that she went to New York with the Defendant to get drugs; (6) Angela Jackson's testimony that Holland had admitted killing someone; and (7) Toyann Anderson's testimony that the Defendant implicated himself in the murder.  (Id. at 7-9).  Holland contends that Posey did not testify that he went to New York to purchase drugs with her and that Anderson did not state that he had implicated himself in Harrigan's murder.

We have reviewed the testimony in this case and have determined that Holland is correct.  Posey did not testify that she had gone with the Defendant to New York to obtain drugs.  It was Toyann Anderson who gave this testimony.  (Doc. 267, Hearing Tr. p. 345).  Further, it was Posey's testimony regarding the

11

night of the murder that evidenced Holland's participation in Harrigan's death, not Anderson's testimony. (*Id.* at 166-8). Although we were mistaken in the identity of the witnesses who gave the testimony, it was not inappropriate for us to rely upon the substance of the testimony and, again, the Defendant has provided no evidence to show that the information is unreliable.

### D. Plea bargain

Holland contends that trial counsel failed to inform him of a plea bargain offered by the Government. He argues that his brother, co-defendant Jeffery Holland, was told that a plea offer existed and that the Defendant could plead guilty and be sentenced to twenty years in prison. (Doc. 337, Hearing Tr. p. 16). However, at the § 2255 hearing the Defendant produced no evidence that such an offer existed. Trial counsel testified that although he may have asked the prosecutor whether a plea agreement would be considered, a plea offer was never made to the Defendant. (*Id.* at 35-6). We find this testimony to be credible. Since there is no evidence that a plea offer was extended to the Defendant, we cannot find trial counsel ineffective.

### E. Side-bars

The Defendant maintains that the court erred in allowing two sidebars to occur outside his presence and for failing to record those sidebars. He contends that his counsel was

12

ineffective for allowing the court to commit these errors and for failing to raise these issues on appeal.

The Defendant claims that the lack of his presence at the two sidebars, one during the original jury charge and one during the supplemental charge, violates his rights under the Sixth Amendment, his due process rights under the Fifth Amendment, and Federal Rule of Criminal Procedure 43. He also asserts that the failure to record these sidebars was a violation of the Court Reporter Act, 28 U.S.C. § 753(b).

The Defendant's first argument is without merit. A defendant does have a constitutional right to be present at every stage of his trial. *United States v. Toliver*, 330 F.3d 607, 611 (3d Cir. 2003. This "right is also mandated by Fed.R.Crim.P 43(a)." *Id*. However, "[t]he right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed." *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984). The sidebars were held to discuss issues of law regarding the jury instructions. In such situations, it is not error to exclude a defendant from participation. *See United States v. Peterson*, 385 F.3d 127, 138 (2d Cir. 2004)(finding that it was not an error to exclude defendants from a defense attorney's meeting with the

13

trial judge as the "meetings were more akin to hearings on an issue of law to which a defendant has little to contribute.").

The Defendant's second argument relates to the Court Reporter Act. "The Court Reporter Act applies to all proceedings in open court, which includes sidebar conferences." *United States v. Sierra*, 981 F.2d 123, 127 (3d Cir. 1992). "[F]ailure to comply with the Court Reporter Act does not warrant a reversal without a specific showing of prejudice...." *Id.* at 125. Here, the Defendant claims that he was prejudiced by the unrecorded sidebars because he is unable to ascertain what was discussed at them and that the result of these sidebars were prejudicial jury instructions.

With regard to the supplemental jury instruction, the Third Circuit, in considering the appeal of Holland's co-defendant, has found that such an omission was not prejudicial. *United States v. Holland*, 75 Fed. Appx. 878, 881 (3d Cir. 2003)(*Holland II*). We have examined the original charge given to the jury and cannot find that the conspiracy instruction was prejudicial. *See United States v. Russell*, 134 F.3d 171, 183 (3d Cir. 1998)("Co-conspirators do not have to know all of the details, goals or even the identity of other co-conspirators, to support the finding of a single conspiracy."). Further, we note that the Third Circuit found that the evidence supported the Defendant's conspiracy conviction. *Holland I*, 76 Fed. Appx. at 454-5. Therefore, we cannot find that the instruction as to

14

willfulness was prejudicial.  As such, we will deny the
Defendant's ineffectiveness claim as he cannot show that he was
prejudiced by a failure to record a side bar.

      F.   Co-conspirator's guilty pleas

      Holland argues that the Government used co-conspirators'
guilty pleas as substantive evidence against him and that counsel
was ineffective for failing to object or ask the court for a
limiting instruction and for failing to raise the issue on appeal.

      "[A]dmitting a [co-conspirator's] guilty plea can
jeopardize the fundamental fairness of a criminal trial because of
the likelihood that the jury may impute a [co-conspirator's] guilt
to the defendant."  *Government of the Virgin Islands v. Mujahid*,
990 F.2d 111, 116 (3d Cir. 1993).  There are times when it can
implicate that defendant's constitutional rights.  *Id.*  While a
guilty plea cannot be admitted as evidence of the defendant's
guilt, it can be used for other purposes, such as attacking a
witnesses credibility.  *Id.* at 115.  A judge, however, must
instruct the jury as to the limited purpose of the evidence.  *Id.*
at 116.  The instruction must highlight for the jury "how the
guilty plea evidence can and cannot be used."  *Id.*

      In the instant case, the Government referenced the
guilty pleas of two co-conspirators, Anthony Braxton and Sharonda
Posey, in its opening statement.  During their testimony, these
two witnesses admitted that they had pled guilty to offenses

related to the drug trafficking activity engaged in by the
Defendant.  The jury was instructed that they could consider the
guilty pleas as follows:

> Some of the witnesses who have testified in
> this case have been convicted of crimes in the
> past.  The testimony of a witness may be
> discredited or impeached by evidence showing
> that the witness has been convicted of a
> felony.  And a felony in Federal Court is
> defined as a crime for which a person may
> receive a prison sentence of more that one
> year.
>
> Such convictions cannot be considered when
> deciding on a defendant's guilt or innocence,
> but they may be considered in determining the
> credibility of the witness who has testified.

(Doc. 268, Trial Tr., Vol. 3, p. 528).  This charge was sufficient
to inform the jury of the limited purpose for which the guilty
pleas could be considered.  *Mujahid*, 990 F.2d at 116.  Therefore,
we cannot find that the guilty pleas of others were used as
evidence against the Defendant.  Further, counsel was not
ineffective for failing to request a limiting instruction, as one
was given, or for failing to raise the issue on appeal.


    G.  Other Claims

        The Defendant's counsel for his § 2255 hearing has
raised two new issues in post-trial briefing to which the
Government has responded.  We address each argument briefly.

16

The Defendant argues that counsel was ineffective for failing to inform the polygraph examiner that he has a low level of intelligence.  Holland participated in a polygraph examination to determine if there may be grounds for a plea agreement.  (Doc. 337, Hearing Tr. p. 36).  He contends that since the examiner did not know of his low intelligence level the examination could be seriously flawed.  However, as noted by the Government, this examination had nothing to do with the jury verdict.  Additionally, the Defendant has provided no support for the argument that counsel had to inform the examiner of his client's level of intelligence before a valid polygraph examination could be administered, or that the exam was, in fact, flawed.

Finally, Holland argues that trial counsel was ineffective for failing to introduce his prior convictions to show that he had no previous drug convictions.  As previously discussed, however, it was reasonable for counsel to keep evidence of Holland's prior convictions from the jury so that they would not infer a propensity for violence from them.  Further, the fact that the Defendant had not previously been arrested and convicted on drug charges is not proof that he was not a participant in the drug conspiracy.

IV.   Conclusion

Based on the foregoing discussion, we will issue an order denying Defendant's claims.  The order will also deny a

17

certificate of appealability, based on the analysis in this
memorandum.  However, Defendant is advised that he has the right
for sixty (60) days to appeal our order denying his section 2255
motion, *see* 28 U.S.C. § 2253(a), and that our denial of a
certificate of appealability does not prevent him from doing so,
as long as he also seeks a certificate of appealability from the
court of appeals.  *See* Federal Rule of Appellate Procedure 22.

We will enter an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: December 7, 2005

18

FILED
HARRISBURG, PA

DEC 07 2005

[illegible] CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :
        Plaintiff

                                   :

    vs.                            :    CRIMINAL NO.   1:CR-01-195-06
                                        CIVIL NO.      1:CV-04-2277
                                   :

HARVEY HOLLAND,
        Defendant                  :

O R D E R

        AND NOW, this 7th day of December, 2005, it is Ordered

that:

        1. Defendant's 2255 motion (Docs. 295, 301)
is denied.

        2. Based on the accompanying memorandum, a
certificate of appealability is denied.

        3. The Clerk of Court shall close this
file.

                          /s/William W. Caldwell
                          William W. Caldwell
                          United States District Judge