THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | 3:01-CR-195 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| HARVEY HOLLAND, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On April 9, 2019, Defendant Harvey Holland filed a Motion for Resentencing Hearing

Under Section 404 of the First Step Act. (Doc. 494). In his Motion and supporting briefs,

Defendant requests this Court impose a sentence of time served. (Doc. 545 at 20). Upon

review of the many written submissions from both parties,[1] this Court finds that Defendant is

entitled to a sentence reduction from life imprisonment for each of counts two and five to a

term of forty years imprisonment on each of counts two and five, to be served consecutively.

---

[1] The parties' submissions include, but are not limited to, the following: Motion for a Resentencing Hearing Under Section 404 of the First Step Act (Doc. 494); Brief in Support of a Resentencing Hearing (Doc. 495); Government's Brief in Opposition to Motion for Resentencing Hearing (Doc. 508); Reply Brief in Support of Resentencing Hearing (Doc. 510); Addendum to the Presentence Report on Defendant Requesting Sentence Reduction (Doc. 537); Government's Sentencing Memorandum (Doc. 541); Defendant's Sentencing Memorandum (Doc. 545); Memorandum in Support of Objections to the Presentence Investigation Report (Doc. 557); Objections to the Presentence Investigation Report (Doc. 557-1); Defendant's Letter Brief Regarding *United States v. Murphy*, 998 F.3d 549 (3d Cir. 2021) (Doc. 565); Government's Letter Brief Regarding *United States v. Murphy*, 998 F.3d 549 (3d Cir. 2021) (Doc. 568).

## II. FACTUAL BACKGROUND

In 2002, Defendant Harvey Holland was convicted of distribution and possession with intent to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 841, (count two) and conspiracy to possess with intent to distribute and distribution of in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 846 (count five).  (PSR at ¶¶ 1-2; Doc. 537 at 1).

Defendant's base offense level for his conviction on counts two and five was determined by the USSG § 2A1.1 cross reference included in USSG 2D1.1(d).  (PSR at ¶ 30).  As stated by the Presentence Investigation Report Prepared by Senior U.S. Probation Officer John Vought in 2002 ("PSR"):

> The guideline for 21 U.S.C. § 841(a)(1) and 864 offenses is USSG § 2D1.1. USSG § 2D1.1(d)(1) (cross-reference) states that if a victim was killed under circumstances constituting murder under 18 U.S.C. § 1111, USSG § 2A1.1 is to be applied.  The Government's evidence establishes by a preponderance of the evidence that the defendant, Jeffrey Holland and Shawn Anderson premeditatedly killed Jason Harrigan, constituting first degree murder.  Under USSG § 2A1.1, the base offense level is forty-three.

(*Id.*).

Defendant was considered a career offender pursuant to USSG § 4B1.1 based on his prior convictions.  (*Id.* ¶ 37).  The offense level for career offenders is 37.  (*Id.*).  The PSR explained that "because the offense level determined above [through the application of the § 2A1.1 cross reference] (43) is greater than that of career offender (37, USSG § 4B1.1(A)), the offense level as determined above is to be used."  (*Id.*).  Therefore,

2

Defendant's base offense level was not impacted by his status as a career offender, and it remained at 43. (*Id.* at ¶ 38).

Next, the PSR summarized Defendant's adult criminal convictions. (*Id.* at ¶¶ 40-56). These convictions resulted in a subtotal criminal history score of twenty-three. (PSR at ¶ 57). There was a two-point increase to this score because Defendant "committed the instant offense less than two years after his release from imprisonment" on charges in New Jersey state court, which raised his criminal history score to twenty-five. (*Id.* at ¶ 58). However, under the Sentencing Guidelines, a criminal history score of thirteen or more establishes a criminal history category of VI, and Defendant's status as a career offender automatically makes his criminal history category VI, as well. (*Id.* at 59). Thus, Defendant had a criminal history category of VI.

At the time of Defendant's original sentencing, Defendant's trial counsel objected to the use of the USSG § 2A1.1 cross reference guidelines enhancement because the jury did not convict Defendant on count four, which charged him with the use of a firearm during and in relation to a drug trafficking crime which resulted in the murder of Jason Harrigan. (2002 PSR Addendum). In response, Probation explained in detail why it believed the § 2A1.1 cross reference was appropriate, stating "[t]he fact that the jury was unable to reach a verdict on the count charging the defendant with homicide does not preclude the conduct as it is relevant conduct under USSG § 1B11.3(a)(1)(A)," and highlighting that "[n]ine individuals either testified or told agents of conversations they had with Mr. Holland and/or

3

Jeffrey Holland and Shawn Anderson concerning their involvement in the murder." (*Id.*).

Probation then explained that in the event the Court determined that the § 2A1.1 cross

reference did not apply, "the guidelines would be calculated pursuant to USSG § 2D1.1 and

result in a base offense level of thirty-six because the amount of crack cocaine is at least

500 grams but less than one and one-half kilograms." (*Id.*).

Judge Caldwell sentenced Defendant on November 20, 2022 and, over Defendant's

objection, determined that application of USSG § 2A1.1 was warranted.  Before announcing

Defendant's sentence, Judge Caldwell stated, "I frankly could not understand in any way

how the jury failed to return a guilty verdict because in my mind, the evidence against all

three of the people who were involved in this was compelling." (Doc. 272 at 7).  Judge

Caldwell then summarized the evidence that provided the basis for the USSG § 2A1.1 cross

reference and concluded:

> I think all of these facts when put together more than persuade me beyond a
> reasonable doubt, certainly by a preponderance of the evidence that Harvey
> Holland was a participant in drug dealing, and that he and his brother conspired
> with Anderson and agreed to seek revenge or whatever it was against Mr.
> Harrigan.
>
> I think it is true that Jeffrey Holland was the boss of this conspiracy so to speak,
> but all of the conspirators were involved in this killing.  I have no trouble coming
> to the conclusion that this relevant conduct must be considered in imposing a
> sentence.

(*Id.* at 10).  Judge Caldwell ultimately sentenced Defendant to "terms of life imprisonment on

each of Counts 2 and 5 to be served concurrently with each other and consecutive to the

sentences imposed in the Dauphin County Court to numbers 3221-00, 3222-00 and 1921-

4

01, and 1963-01," a five year term of supervised release on counts two and five, and a fine

of $4,200.  (*Id.* at 12-13).

Defendant filed appeals and a variety of post-conviction relief motions, all of which

were denied.  Defendant now moves for relief under the First Step Act.

### III. ANALYSIS

#### a. Whether Defendant is Eligible for Resentencing Under the First Step Act

First the Court will determine whether Defendant is eligible for relief pursuant to the

First Step Act.  *United States v. Shields*, 2022 WL 3971778, at *8 (3d Cir. Sept. 1, 2022)

("First, upon receiving the [motion for First Step Act resentencing], the court determines

whether the defendant is eligible for relief under the statute[.]").  "The First Step Act

authorizes district courts to reduce the prison sentences of defendants convicted of certain

offenses involving crack cocaine.  The Act allows a district court to impose a reduced

sentence 'as if' the revised penalties for crack cocaine enacted in the Fair Sentencing Act of

2010 were in effect at the time the offense was committed."  *Concepcion v. United States*,

142 S.Ct. 2389, 2396 (2022).  Section 404 of the First Step Act specifies its applicability:

> (a) DEFINITION OF COVERED OFFENSE. – In this section, the term "covered
> offense" means a violation of a Federal criminal statute, the statutory penalties
> for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010
> (Public Law 111-220; 124 Stat. 2372), that was committed before August 3,
> 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED. – A court that imposed a sentence for
> a covered offense may, on motion of the defendant, the Director of the Bureau
> of Prisons, the attorney for the Government, or the court, impose a reduced
> sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law

111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS. – No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. 115-391, § 404(a)-(c), 132 Stat. 5222.

Here, the Court finds that Defendant is eligible for resentencing under the First Step Act for his convictions on counts two and five.  Defendant was convicted of distribution and possession with intent to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 841 (count two) and conspiracy to possess with intent to distribute and distribution of in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 846 (count five).  (Doc. 537 at 1).  The statutory penalties for the crack cocaine-related offenses of which Defendant was convicted were modified by the Fair Sentencing Act of 2010.  Pub. L. No. 111-220, § 2, 124 Stat. 2371 (increasing the minimum quantity of cocaine base needed to trigger the ten-year minimum sentence under 21 U.S.C. § 841(b)); *see also United States v. Murphy*, 998 F.3d 549, 553 (3d Cir. 2021).  The conduct underlying the charges of which Defendant was convicted occurred between January 1997 and April 2001, and Defendant was sentenced in November 2002.  (*See generally* PSR).  The limitations on resentencing eligibility described

6

in § 404(c) of the First Step Act do not apply.  Therefore, Defendant is eligible for a

sentencing reduction pursuant to the First Step Act.

### b. Whether Defendant is Entitled to a Resentencing Hearing

In *United States v. Easter*, the Third Circuit held that a defendant moving for

resentencing pursuant to the First Step Act "is not entitled to a plenary sentencing hearing at

which he would be present."  *United States v. Easter*, 975 F.3d 318, 326 (3d Cir. 2020)

(collecting cases);[2] *Murphy*, 998 F.3d at 555 (reaffirming *Easter*); *see also United States v.*

*Barlow*, 2022 WL 820462, at *1 (3d Cir. March 18, 2022) ("Regardless, a defendant moving

for a sentence reduction under the First Step Act 'is not entitled to a plenary resentencing

hearing at which he would be present.'" (quoting *Easter*, 975 F.3d at 326)); *United States v.*

*Bullock*, 2021 WL 4145233, at *2 (3d Cir. Sept. 13, 2021 ("Action by a district court under the

First Step Act is discretionary and does not entitle movants like Bullock to plenary

resentencing or a resentencing hearing." (citing *Easter*, 975 F.3d at 326)).  The Third Circuit

reaffirmed *Easter*, holding, "neither the original sentencing judge nor a judge to whom the

case has been reassigned is required to hold an in-person resentencing hearing on a First

Step Act motion[.]"  *United States v. Shields*, 2022 WL 3971778, at *7 (3d Cir. Sept. 1, 2022).

The Third Circuit reaffirmed *Easter*, holding, "neither the original sentencing judge nor a judge

---

[2] The parties fully briefed the issue of whether a hearing is necessary.  (*See* Doc. 495; Doc. 508; Doc. 510).  These briefs, however, were filed between April and June of 2019, which is years before the Third Circuit decided *United States v. Easter* in September of 2020, *United States v. Murphy* in May 2021 (and amended in August 2021), and *United States v. Shields* in September 2022.  Therefore, the Court did not rely on these briefs.

to whom the case has been reassigned is required to hold an in-person resentencing hearing on a First Step Act motion[.]" *Shields*, 2022 WL 3971778, at *7.

In light of the controlling Third Circuit caselaw summarized above, the Court finds that Defendant is not entitled to a plenary resentencing hearing. As such, the Court will evaluate the merits of his Motion for resentencing based on the parties' written submissions.[3]

### c. Sentencing Guidelines

As stated above, Section 404(b) of the First Step Act provides that if a defendant is eligible for resentencing the Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (P. L. 111-220; 124 Stat. 2372), were in effect at the time the covered offense was committed." Pub. L. 115-391, § 404(b), 132 Stat. 5222. "[T]he language Congress enacted in the First Step Act specifically requires district courts to apply the legal changes in the Fair Sentencing Act when calculating the Guidelines if they chose to modify a sentence." *Concepcion*, 2022 WL 142 S.Ct. at 2402. However, a resentencing court cannot

> recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act. Rather, the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range "anchor[s]" the sentencing proceeding. *Peugh v. United States*, 569 U.S. 530, 541, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). The district court may then consider postsentencing conduct or nonretroactive changes in

_____

[3] The parties have submitted extensive written briefings to the Court, including sentencing memoranda and objections to the PSR. (*See supra* n.1); *see also Shields*, 2022 WL 3971778, at *8 (finding the district court "erred by denying Shields either a hearing or a reasonable opportunity to present his sentencing arguments in writing").

selecting or rejecting an appropriate sentence, with the properly calculated
Guidelines range as the benchmark.

*Id.* at 2402 n.6; *see also Shields*, 2022 WL 3971778, at *4.

In addition, "a district court must generally consider the parties' nonfrivolous

arguments before it." *Concepcion*, 142 S.Ct. at 2404.  Although the district court must

consider these nonfrivolous arguments, it "is not required to be persuaded by every

argument parties make, and it may, in its discretion, dismiss arguments that it does not find

compelling without a detailed explanation." *Id.*  As the Supreme Court summarized,

> The First Step Act does not require a district court to accept a movant's
> argument that evidence of rehabilitation or other changes in law counsel in
> favor of a resentence reduction, or the Government's view that evidence of
> violent behavior in prison counsel against providing relief.  Nor does the First
> Step Act require a district court to make a point-by-point rebuttal of the parties'
> arguments.  All that is required is for a district court to demonstrate that it has
> considered the arguments before it.

*Id.* at 2404-05.  As part of this analysis, a district court is "authorized to take into account, at

the time of resentencing, any changed circumstances, 'includ[ing] post-sentencing

developments, such as health issues or rehabilitation arguments, as were raised' by the

parties." *Shields*, 2022 WL 3971778, at *4 (quoting *Murphy*, 998 F.3d at 559; *Easter*, 975

F.3d at 327); *see also Concepcion*, 142 S.Ct. at 2398-2403.  Finally, although a court may

do so, courts are not required to impose a reduced sentence when evaluating a First Step

Act motion. *Easter*, 975 F.3d at 327; *Concepcion*, 142 S.Ct. at 2404 ("Section 404(c) of the

First Step Act confers particular discretion, clarifying that the Act does not 'require a court to

reduce any sentence.'").

Using the above framework, the Court will first determine Defendant's Guidelines range, consider the nonfrivolous arguments raised by Defendant, and will then turn to an evaluation of the applicable § 3553(a) factors.

### i. Class A to Class B Felonies

At the time of Defendant's original sentencing in 2002, distribution and possession with the intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (count two) and conspiracy to distribute and possession with the intent to distribute more 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 (count five) were both "Class A felonies punishable by a mandatory minimum of ten (10) years to a maximum of life imprisonment." (Doc. 537 at 1).

Since Defendant's conviction and sentencing in 2002, the penalties for the offenses of which Defendant was convicted changed under the Fair Sentencing Act and the First Step Act. The Third Circuit summarized the relevant provisions of these statutes as follows:

> In 2010, section 2 of the Fair Sentencing Act increased the minimum quantity of cocaine base needed to trigger the ten-year minimum sentence under 21 U.S.C. § 841(b) from 50 grams to 280 grams. Pub. L. No. 111-220, § 2, 124 Stat. 2371, 2372. …
>
> Congress again revised the sentencing framework for drug offenses in 2018, when it passed the First Step Act. Section 404(b) of that Act permitted a district court that had sentenced a defendant prior to the Fair Sentencing Act to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act … were in effect at the time the covered offense was committed." Pub L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. But a court was not "*require[d]* … to reduce any sentence pursuant to [that] section." *Id.* § 404(c) 132 Stat. at 5222 (emphasis added). Separately, section 401 of the First Step Act redefined what prior drug convictions could be used to enhance a sentence under 21 U.S.C. §

10

841(b).  It said that the prior offense had to be not simply a felony drug offense but instead a "serious drug felony[,]" which is one for which the offender "served a term of imprisonment of more than 12 months[.]"  *Id.* at § 401(a), 132 Stat. at 5220.  Section 401 "appl[ied] to any offense that was committed before the date of enactment of [the] Act, if a sentence for the offense ha[d] not been imposed as of such date of enactment."  *Id.* § 401(c), 132 Stat. at 5221.

*Seabrookes*, 2022 WL 3098651, at * 1.

In accordance with section 2 of the Fair Sentencing Act, made retroactive by the First Step Act, Defendant's convictions for counts two and five have been reduced to Class B felonies, and the statutory penalties have been reduced to a minimum of five years imprisonment to a maximum of forty years imprisonment.  (Pub. L. No. 111-220, § 2, 124 Stat. 2371, 2372; *see also* Doc. 537 at 2).  Defendant, the Government, and Probation are all in agreement on this point.  (Doc. 537 at 2; Doc. 541 at 4; Doc. 545 at 2).  Thus, the statutory penalties for Defendant's convictions for violating 21 U.S.C. §§ 841 and 846 are reduced from ten years to life imprisonment to five years to forty years imprisonment, and the mandatory minimum term of supervised release is reduced to four years for counts two and five.

### ii. USSG § 2A1.1 Cross Reference

Next, the Court will consider whether the cross reference to USSG § 2A1.1 is still applicable to Defendant.  *Concepcion*, 142 S.Ct. at 2404 ("It is well established that a district court must generally consider the parties' nonfrivolous arguments before it.").  As summarized above, the base offense level calculation in the PSR prepared for Defendant's initial sentencing in 2002 states:

11

The guideline for 21 U.S.C. § 841(a)(1) and 846 offenses is USSG § 2D1.1. USSG § 2D1.1(d)(1) (cross-reference) states that if a victim was killed under circumstances constituting murder under 18 U.S.C. § 1111, USSG § 2A1.1 is to be applied.  The Government's evidence establishes by a preponderance of the evidence that the defendant, Jeffrey Holland and Shawn Anderson premeditatedly killed Jason Harrigan, constituting first degree murder.  Under USSG § 2A1.1, the base offense level is forty-three.

(PSR at ¶ 30).  In the addendum to the PSR filed on January 7, 2021, Probation stated that "[t]he base offense level cross reference to USSG §2A1.1 is unchanged but the guideline sentence is reduced to the combined statutory maximum of 80 years imprisonment."  (Doc. 537 at 2).

Defendant objects to the application of the USSG § 2A1.1 cross reference. According to Defendant, USSG § 2A1.1 does not apply because the Government did not include the murder of Jason Harrigan as part of the conspiracy of which he was convicted. (Doc. 557 at 3-4).  In addition, Defendant argues that "there is insufficient proof of either a murder connected to drug distribution or that Mr. Holland committed it."  (*Id.* at 4).

The Court finds Defendant's arguments unpersuasive and without merit.  *See Concepcion*, 142 S.Ct. at 2404 ("Of course, a district court is not required to be persuaded by every argument parties make[.]").  Although Judge Caldwell could not review the trial transcript in advance of Defendant's sentencing hearing because it was not yet available, the facts contained in the transcript were not "new, relevant facts that did not exist, or could not have reasonably been known by the parties, at the time of the first sentencing."  *Murphy*, 998 F.3d at 555 (citing *Easter*, 975 F.3d at 327).  This is because Judge Caldwell himself

12

presided over Defendant's trial, "had the unique advantage … of hearing all of the evidence

in this case," and "heard and saw and observed all of the witnesses in this case." (Doc. 272

at 7). *Murphy* cautioned that when deciding a First Step Act motion, "'the resentencing

court cannot … reconsider the facts as they stood at the initial sentencing.'" 998 F.3d at

555 (quoting *Jones*, 962 F.3d at 1303).[4] In short, Defendant requests this Court do

something it cannot do by asking for reevaluation of the facts underlying the application of

the USSG § 2A1.1 sentencing enhancement. Therefore, the Court cannot, and will not,

review the specific facts underlying the sentencing court's decision from twenty years ago

that the USSG § 2A1.1 enhancement applied.

Furthermore, in an objection to the PSR, Defendant argues that "on Sixth

Amendment and due process grounds, the district court should not punish Mr. Holland for a

crime that the jury did not convict him[.]" (Doc. 557-1 at 1; *see also* Doc. 557 at 5). This is

incorrect. There are no "Sixth Amendment [or] due process" concerns with a sentencing

court considering conduct of which a defendant has been acquitted or has not been

convicted to determine his or her appropriate guidelines range and sentence. In fact, the

Supreme Court expressly endorsed this practice in *United States v. Watts*, 519 U.S. 148

(1997), where it held that "a jury's verdict of acquittal does not prevent a sentencing court

from considering conduct underlying the acquitted charge, so long as that conduct has been

---

[4] Although the Third Circuit's decision *United States v. Shields* abrogated certain holdings in *Murphy*, *see Shields*, 2022 WL 3971778, at *4, it did not abrogate *Murphy*'s holding that "a sentencing court cannot reconsider factual findings made by the original sentencing court concerning the underlying offense." *Shields*, 2022 WL 3971778, at *5 n.7 (citing *Murphy*, 998 F.3d at 554-55).

13

proved by a preponderance of the evidence." *Watts*, 519 U.S. at 157.  Similarly, the

Supreme Court has stated that "[s]entencing courts have not only taken into consideration a

defendant's prior convictions, but have also considered a defendant's past criminal

behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511

U.S. 738, 747 (1994); *see also BMW of North America, Inc. v. Gore*, 517 U.S. 559, 573 n.19

(1996) ("A sentencing judge may even consider past criminal behavior which did not result

in conviction."); *Williams v. New York*, 337 U.S. 241 (1949) ("Highly relevant – if not

essential – to his selection of an appropriate sentence is the possession of the fullest

information possible concerning the defendant's life and characteristics.  And modern

concepts individualizing punishment have made it all the more necessary that a sentencing

judge not be denied an opportunity to obtain pertinent information by a requirement of rigid

adherence to restrictive rules of evidence properly applicable to the trial.").

For the aforementioned reasons, this Court will not redetermine the facts underlying

the applicability of the USSG § 2A1.1 enhancement on Defendant's sentencing guidelines,

nor will this Court entertain Defendant's arguments that are foreclosed by extensive

Supreme Court precedent.  Thus, following the Third Circuit's holding in *Murphy* that "the

resentencing court cannot … reconsider the facts as they stood at the initial sentencing," the

Court will overrule Defendant's objection to the 2021 PSR Addendum (Doc. 537) and deny

his request to reconsider the application of the USSG § 2A1.1 cross-reference

enhancement on Defendant's base offense level calculation.  Accordingly, Defendant's base

offense level remains 43 (*see* USSG § 2A1.1(a)).

### iii. Career Offender

When considering a First Step Act motion, the resentencing court may consider a

defendant's argument that he no longer qualifies as a career offender.  *See Shields*, 2022

WL 3971778, at *5; *see also Concepcion*, 142 S.Ct. at 2403 (collecting cases).  A defendant

qualifies as a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant
> committed the instant offense of conviction; (2) the instant offense conviction
> is a felony that is either a crime of violence or a controlled substance offense;
> and (3) the defendant has at least two prior felony convictions of either a crime
> of violence or a controlled substance offense.

USSG § 4B1.1(a).  For purposes of the career offender enhancement, a crime of violence is

defined as "any offense under federal or state law, punishable by imprisonment for a term

exceeding one year, that (1) has an element the use, attempted use, or threatened use of

physical force against the person of another, or (2) is murder, voluntary manslaughter,

kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use

or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material

as defined in 18 U.S.C. § 841(c)."  USSG § 4B1.2(a).

Defendant was originally sentenced as a career offender based on his prior

convictions.  (PSR at ¶ 37; Doc. 537 at 1).  However, Defendant's base offense level did not

depend on his status as a career offender.  (PSR at ¶ 37 ("Pursuant to USSG § 4B1.1, the

defendant is considered a career offender, however, because the offense level determined above (43) is greater than that of a career offender (37, USSG § 4B1.1(A)), the offense level as determined above is to be used.")).

The first two requirements for the imposition of the career offender enhancement are not in dispute: Defendant was above the age of eighteen at the time of his current convictions and his conviction on count two is a controlled substance offense, which is one way of satisfying the second career offender requirement.  USSG § 4B1.1(a).  Defendant disputes the third requirement of the enhancement, which requires that he have two prior convictions for a controlled substance offense or a crime of violence.  *Id.*  Defendant claims he is no longer a career offender because his prior convictions for robbery, aggravated assault, and burglary are no longer predicate offenses for the enhancement.  (Doc. 557 at 5-7; Doc. 557-1 at 2).

Defendant has a prior conviction for "Aggravated Assault/Unlawful Pointing of a Firearm" from Essex County, New Jersey.  (PSR at ¶ 47).  Although the PSR does not indicate the statute under which Defendant was convicted, the relevant statute for this offense is NJ Rev Stat § 2C:12-1(b)(4).  This provision prohibits "[k]nowingly under circumstances manifesting extreme indifference to the value of human life point[ing] a firearm, as defined in subsection f. of N.J.S.A. 2C:39-1, at or in the direction of another, whether or not the actor believes it to be loaded."  NJ Rev Stat § 2C:12-1(b)(4).  The PSR's description of Defendant's offense reads:

The defendant was represented by counsel. He was arrested under the name Louis Fontaine Lee. On April 1, 1993, the defendant was illegally in possession of a loaded .22 caliber revolver which he pointed at an Aaron Bellamy while threatening to shoot the victim. The defendant served the maximum term and was released on June 26, 1996.

(PSR at ¶ 47).

In *United States v. Williams*, the court considered whether this offense qualifies as a crime of violence under the Sentencing Guidelines and determined that it did so qualify. *United States v. Williams*, 2022 WL 2209868, at *3 (D.N.J. June 21, 2022). The *Williams* Court explained that "[p]ointing a firearm at another person also necessarily entails a threat to use 'physical force,'" and the statute at issue "requires more than knowingly pointing a firearm at another. The defendant must also do so in circumstances showing indifference to human life." *Id.* at *5. This statute requires "knowing[ ]" conduct, "not simply recklessness, and therefore is not disqualified as a crime of violence based on the *mens rea*." *Id.* at *6

This Court agrees with the conclusion of the *Williams* Court and similarly finds that NJ Stat Ann 2C:12-1(b)(4), aggravated assault/unlawful pointing of a firearm, qualifies as a crime of violence for purposes of the career offender enhancement.

For Defendant to be considered a career offender, he must have at least one more convictions for a controlled substance offense or a crime of violence. Based on the PSR, it appears the only other prior convictions that could potentially qualify are Defendant's two prior robbery convictions. (*See* PSR at ¶ 45). The Third Circuit recently determined that the Pennsylvania's robbery statute is divisible and as a result, "a court may review judicial

17

record evidence to ascertain a defendant's precise prior conviction." *United States v. Carey*, 2021 WL 2936741, at \*2 (3d Cir. July 13, 2021).

Here, however, neither party provided the Court with record evidence that would permit the Court to "ascertain Defendant's precise prior conviction." *Id.* Thus, the Court has no facts that undermine the PSR's description of the events underlying Defendant's convictions, which state:

> (Count I)
> On September 29, 1981, Mr. Holland entered a convenience store with a gun that he cocked and pointed in the air above the clerk's head while demanding money.
>
> (Count II)
> On September 28, 1981, Mr. Holland entered a convenience store and grabbed money from the assistant manager causing the victim to hit her head on an electrical casing. The defendant was paroled on June 10, 1988, returned on a parole violation, and reparoled September 16, 1989.

(PSR at ¶ 45); *see United States v. Volek*, 796 F.App'x 123, 125 (3d Cir. 2019) ("A divisible statute calls for us to use the modified categorical approach to determine whether Volek's convictions are predicate offenses under the Guidelines. Instead of submitting the typical *Shepard* documents at sentencing, the government produced only Volek's PSR to clarify the nature of his prior convictions. We have previously held that a court can look to a presentence report if a defendant did not challenge the descriptions of the factual accounts within it." (citing *United States v. Siegel*, 477 F.3d 87, 93-94 (3d Cir. 2007))). Additionally, Defendant arguments are insufficient to call the PSR's description of the convictions into

18

question because he provides the Court with generalized statements of law unaccompanied by facts specific to Defendant's two prior robbery convictions.  (Doc. 557 at 5-7).

Absent such record evidence or legal argument specifically tied to the facts of Defendant's convictions, the reasonable, if not unavoidable, inference from the PSR's descriptions of Defendant's conduct in connection with his prior robbery convictions is that Defendant's *mens rea* in committing these offenses was that of intentional or knowing.  *See Concepcion*, "[D]istrict courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments.  It is well established that a district court must generally consider the parties' nonfrivolous arguments before it. … Of course, a district court is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation.").

Thus, the Court has no basis to find that Defendant is no longer a career offender for purposes of the USSG § 4B1.1 enhancement.  However, as stated above, Defendant's original sentence did not rely on his status as a career offender. (PSR at ¶ 37 ("Pursuant to USSG § 4B1.1, the defendant is considered a career offender, however, because the offense level determined above (43) is greater than that of a career offender (37, USSG § 4B1.1(A)), the offense level as determined above is to be used.")).  The same is true at resentencing.  Therefore, although the Court has determined that Defendant still qualifies as a career offender, this enhancement ultimately has no impact on his sentence.  (*See infra*, III.c.v).

19

### *iv. Drug Weight Attributable to Defendant*

In *Murphy*, the Third Circuit held, "a district court is 'bound by a previous finding of

drug quantity that could have been used to determine the movant's statutory penalty at the

time of sentencing.'"  998 F.3d at 555 (quoting *Jones*, 962 F.3d at 1303).[5]  Despite the clear

holding of *Murphy*, Defendant argues that *Murphy* is not informative because Defendant "is

not challenging the jury's drug quantity finding or the current statutory penalty.  Rather, he

challenges the finding in the presentence report that affects his advisory guidelines range."

(Doc. 565 at 4).  Defendant also argues that his case his distinguishable from *Murphy*

because "Mr. Holland, unlike Murphy, objected to the drug weight in the presentence

report."  (*Id.*).  Finally, Defendant contends that "the Probation Office based its drug quantity

calculation on an inaccurate factual predicate."  (*Id.* at 5).

Much like Defendant's argument that the USSG § 2A1.1 cross reference

enhancement should not apply, Defendant requests this Court to conduct an analysis in

which it may not engage.  As was the case when determining whether the Court can

redetermine the applicability of the USSG § 2A1.1 cross-reference, it cannot be said that the

facts underlying the determination of the drug weight attributable to Defendant are "new,

---

[5] In *Shields*, the Third Circuit stated that this holding of *Murphy* did not apply to defendant Shields because there, the district court "did not make any findings pertaining to these enhancements [based on drug weight] during Shield's original sentencing because it concluded that neither enhancement would change his Guidelines range given his career-offender status."  *Shields*, 2022 WL 3971778, at *5 n.7.  As described in this Section, the original PSR and the original sentencing court in this case made factual findings as to the drug weight attributed to Defendant.  Thus, the factual scenario faced by this Court is materially different than the situation faced by the district court in *Shields*.

relevant facts that did not exist, or could not reasonably have been known by the parties, at the time of the first sentencing." *Murphy*, 998 F.3d at 555 (citing *Easter*, 975 F.3d at 327). Nothing has changed in the intervening twenty years between Defendant's original sentencing in 2002 and the Court's disposition of his First Step Act motion with regard to the weight of crack cocaine attributed to Defendant. This Court cannot "reconsider the facts as they stood at the initial sentencing." *Id.*; *see Shields*, 2022 WL 3971778, at *5 n.7.

Moreover, both the PSR and Judge Caldwell assessed the amount of crack cocaine attributable to Defendant at his sentencing. In the PSR addendum prepared in 2002, Probation determined that Defendant was responsible for "at least 500 grams but less than one and one-half kilograms" of crack cocaine. (2002 PSR addendum). At sentencing, the following exchange took place:

> THE COURT: What quantity of crack cocaine did we talk about in this case?
>
> MR. BEHE: The jury returned a verdict that was in excess of fifty grams. That would place this at a mandatory ten to life absent anything else. But the quantity of crack cocaine from the various witnesses places it conservatively at at least one half of a kilogram up to a kilogram and a half of crack cocaine that was involved in the conspiracy.
>
> THE COURT: That would be what?
>
> MR. BEHE: Five hundred grams to one and one half kilograms.

(Doc. 272 at 5-6). The Court gave Defendant's trial counsel an opportunity to "respond to anything that Mr. Behe just said," but his trial counsel did not object or question the drug weight attributed to Defendant. (*Id.* at 6). Moreover, it bears repeating that Judge Caldwell

21

had the "unique advantage" of "hearing all of the evidence in this case." (*Id.* at 7). The

*Murphy* Court held that "the resentencing court cannot reach beyond those circumstances

to reconsider the facts as they stood at the initial sentencing" and the resentencing court is

"bound by a previous finding of drug quantity that *could have been used* to determine the

movant's statutory penalty at the time of sentencing." *Murphy*, 998 F.3d at 555 (quotation

and citation omitted) (emphasis added).  Judge Caldwell could have relied on the quantity of

crack cocaine attributed to Defendant had he determined that the USSG § 2A1.1 cross

reference did not apply; thus, under *Murphy*, this Court cannot reconsider drug weight

attributed to Defendant. (*See* 2002 PSR addendum ("Should the Court find for the

defendant, the guidelines would be calculated pursuant to § 2D1.1 and result in a base

offense level of thirty-six because the amount of crack cocaine is at least 500 grams but

less than one and one-half kilograms.").

Finally, while Defendant is correct that, unlike the defendant in *Murphy*, he asserts

factual errors in the calculation of drug weight attributed to Defendant in the 2002 PSR

addendum, his argument that this fact has any impact on whether the Court can reconsider

the drug weight attributable to Defendant is without merit. (*See* Doc. 565 at 4); *see*

*Concepcion*, 142 S.Ct. at 2404 ("Of course, a district court is not required to be persuaded

by every argument parties make, and it may, in its discretion, dismiss arguments that it does

not find compelling without a detailed explanation.").  The Third Circuit stated that its

"conclusion [that the resentencing court may not reconsider the sentencing court's

22

determination of drug weight that could have been used to determine the defendant's statutory penalty] would not change even if [Murphy] had objected" to the drug quantity calculation at the time of his initial sentencing. *Murphy*, 998 F.3d at 554 n.3 ("The parties disagree on whether Murphy objected to the drug quantity at his initial sentencing, but our conclusion would not change even if he had objected."). The holding of *Murphy* does not turn on whether a defendant objects to the drug weight attributable to him at the time of his original sentencing. Therefore, Defendant's objection to the drug quantity calculation is immaterial to this Court's analysis of whether it can revisit the drug quantity attributed to Defendant.

Accordingly, the Court cannot revisit the weight of crack cocaine attributed to Defendant that was assessed by Probation and determined by the court at the time of his initial sentencing in 2002, and is "bound by the finding of drug quantity that could have been used to determine [Defendant's] statutory penalty at the time of sentencing." *Id.* at 555 (quotation omitted); *see also Shields*, 2022 WL 3971778, at *5 n.7.

### vi. Defendant's Base Offense Level and
### Criminal History Category at Resentencing

Above, the Court analyzed the impact of the First Step Act and Fair Sentencing Act on Defendant's sentencing exposure at resentencing. In light of this analysis, the Court determines that, due to the application of the USSG § 2A1.1 cross reference, Defendant's base offense level is 43. Defendant has a criminal history category of VI. Based only on

23

Defendant's base offense level and his criminal history category, Defendant's Sentencing Guidelines range would result in life imprisonment.  USSG § 5A.

The statutory maximum sentence on each of Defendant's counts of conviction, however, is less than life imprisonment.  Defendant's convictions for 21 U.S.C. §§ 841 and 846 each carry a statutorily authorized maximum penalty of forty years imprisonment.  21 U.S.C. § 841(b)(1)(B).  According to the Sentencing Guidelines, "[t]he defendant's guideline range on the Sentencing Table may be affected or restricted by a statutorily authorized maximum sentence or a statutorily required minimum sentence[.]"  USSG § 5G1.2 (Application Note 3(B)).  Specifically, "where a statutorily authorized maximum sentence on a particular count is less than the minimum of the applicable guideline range, the sentence imposed on that count shall not be greater than the statutorily authorized maximum sentence on that count."  *Id.*

Therefore, Defendant's guidelines range of life imprisonment is restricted to a maximum sentence of forty years imprisonment on count two and forty years imprisonment on count five, in addition to a term of four years supervised release on each count.

### d. 3553(a) Factor Analysis

Section 404(b) of the First Step Act requires that the resentencing court "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  During a First Step Act resentencing, courts "are authorized to take into account, at the time of resentencing, any changed

24

circumstances, 'includ[ing] post-sentencing developments, such as health issues or rehabilitation arguments[.]"  *Shields*, 2022 WL 3971778, at *4; *see also Concepcion*, 142 S.Ct. at 2398-2404; *Murphy*, 998 F.3d at 559; *Easter*, 975 F.3d at 327.  Here, the parties filed sentencing memoranda and other written briefings that discussed the § 3553(a) factors, attached relevant documentation (such as certificates from successful completion of Bureau of Prisons programming), and identified objections to the PSR.  *See Shields*, 2022 WL 3971778, at *8.  Accordingly, the Court is prepared to address the § 3553(a) factors based on the written submissions by the parties.

Above, the Court determined that Defendant is entitled to a sentence reduction from life imprisonment on counts two and five to a maximum term of forty years imprisonment on each of counts two and five, plus a mandatory minimum term of four years supervised release on each count.  The Court now applies the 18 U.S.C. § 3553(a) factors.  On November 20, 2002, Defendant appeared for sentencing before the late Honorable William W. Caldwell after having been convicted on two counts of a second superseding indictment: of distribution and possession with the intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (count two) and conspiracy to distribute and possess with the intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 (count five).  (PSR at ¶¶ 1-2; Doc. 537 at 1).  Defendant was sentenced to "terms of life imprisonment on each of Counts 2 and 5 to be served concurrently with each other and consecutive to the sentences imposed in the Dauphin County Court to numbers 3221-00,

25

3222-00 and 1921-01, and 1963-01," a five year term of supervised release on counts two and five, and a fine of $4,200.  (Doc. 272 at 12-13).

### i. Defendant's History and Characteristics

As stated in his sentencing memorandum, "Harvey Holland's life began when his father shot his mother while she was pregnant with him." (Doc. 545 at 1).  Defendant's childhood and early adolescence can be described as a time when he was lacking in family support and affection, as well as a time during which he suffered considerable abuse. (*See* PSR at ¶¶ 72-73; Doc. 545 at 5-8).  The PSR indicates that Defendant's mother and father were both "heavy drinkers" and they "argued constantly." (PSR at ¶ 72; Doc. 545 at 6). Defendant's parents separated and his father "left," so Defendant lived with his mother until her death. (PSR at ¶ 72).  Defendant then lived with his mother's sister, who physically abused him and her own children. (Doc. 545 at 6).  At twelve, Defendant was "admitted to the Elwyn Institute, a mental health facility/special needs school in Elwyn, Pennsylvania." (*Id.* at ¶ 73).  A school psychologist at the Elwyn Institute "diagnosed Harvey as functioning in the borderline range of mental retardation." (Doc. 545 at 7).  Defendant remained at the Elwyn Institute until he dropped out at the age of nineteen.  (*Id.*; PSR at ¶ 73).  Within two years of Defendant leaving the Elwyn Institute, he engaged in repeated criminal activity, and the PSR lists criminal convictions for, *inter alia*, robbery, burglary, and aggravated assault. (*See* PSR at ¶¶ 40-56).  Defendant "eventually slipped into drug use" as a "coping mechanism," but he eventually became addicted to crack cocaine. (Doc. 545 at 7).

26

### ii. Nature and Circumstances of the Offenses and

### Application of 18 U.S.C. § 3553(a) Factors

The sentence imposed by Judge Caldwell accurately reflects the seriousness of each of the offenses for which Defendant was sentenced. The jury found that Defendant possessed and/or possessed with the intent to distribute 50 grams or more of crack cocaine. (PSR at ¶ 1). The PSR further indicates that Defendant, together with Jeffrey Holland, Shawn Anderson, and Lavelle Gamble, were involved in "the unlawful distribution of substantial amounts of crack cocaine" in the Harrisburg area. (*Id.* at ¶ 4). Defendant's associates, Gamble and Anderson, were each shot to death, with Anderson having been murdered following a drug-related incident. *Id.* Paragraphs 4 through 14 of the PSR describe in considerable detail Defendant's crack cocaine distribution activities, as well as his firearm possession. The PSR explains that Mark Hughes "described Harvey Holland as very dangerous and always in possession of a gun," and that Ezerell Byum testified that "Harvey Holland's role was 'protector.'" (*Id.* at ¶¶ 11, 14). The PSR cites the testimony of Anthony Braxton as evidence of Defendant's crack-cocaine distribution operation with his brother Jeffrey Holland and includes Braxton's statement that both Defendant and his brother Jeffrey Holland, "bragged to him that they had shot an Ernie Stewart in a phone booth at the corner of 19th and Bellevue Streets in Harrisburg." (*Id.* at ¶ 7). Braxton added that "the Hollands took him past the phone booth and pointed out the bullet holes in the phone booth." (*Id.*). Law enforcement confirmed that such an incident had occurred, as

Stewart was hit in the head and had become mentally incapacitated. (Id.). Significantly, the

PSR establishes that Defendant was a known high level, violent drug dealer.

Defendant argues that the USSG § 2A1.1 cross reference should not apply because

"there is insufficient proof of either a murder connected to drug distribution or that Mr.

Holland committed it." (Doc. 557 at 4). Judge Caldwell determined there was abundant

evidence to the contrary, saying, "I frankly could not understand in any way how the jury

failed to return a guilty verdict because in my mind, the evidence against all three of the

people who were involved in this was compelling." (Doc. 272 at 7). He continued:

> THE COURT: As I did in the Jeffrey Holland case, I am going to just briefly outline the evidence that is directly related to Harvey Holland. But I also note, as Mr. Behe has, that many of the things Jeffrey Holland said to other people or did as a conspirator are admissible and can be considered against Harvey. And I am not going to outline all of that evidence.
>
> Anthony Braxton in paragraph seven of the presentence report, and I recall it from the trial, indicated that the defendant and his brother bragged about shooting an individual named Stewart who apparently was shot in a phone booth near the time when this killing occurred. I am not saying that that is evidence that either of the gentlemen were involved in shooting Harrigan, but I think it is evidence that can be considered with all of the other evidence as to whether or not Mr. Harvey Holland was involved in this killing.
>
> Mark Hughes testified that the defendant and his brother Jeffrey sold crack since 1986, and that he went to New York City to buy crack. Sometime in the winter of 2000, Mr. Hughes said that the defendant and his brother robbed and shot another dealer. I don't know if that would be Stewart or not. Mr. Behe, do you know who that was?
>
> MR. BEHE: I believe that was supposed to have been Mr. Stewart.
>
> THE COURT: I think Mr. Hughes indicated that he observed the defendant in the car – in a car at one time with a weapon, and that he was always in

28

possession of a weapon and told Mr. Hughes about the shooting of Mr. Stewart in the phone booth.

Jamine Jackson said that the defendant was a violent person with a reputation as an enforcer.  Sharonda Poser testified she traveled to New York with the defendant to get drugs.  Angela Jackson, as Mr. Behe has indicated, testified that he admitted at one time or told her at one time that he was taking care of business in Camelot Village and admitted that he had killed someone.

Toyann Anderson said that the defendant implicated himself in the murder with Shawn Anderson and Jeffrey Holland.  I think I have that correct.

MR. BEHE: Yes, sir.

THE COURT: Anthony Jackson said that Jeffrey implicated the defendant Harvey and Shawn, and that Harvey admitted to Jackson that he and Jeffrey shot Harrigan.

Sharonda Posey said that the defendant Jeffrey Holland and Shawn Anderson were excited waiting for a TV news report of Mr. Harrigan's death, and that when it came on, things were said like here it is and that nigger is dead, and he got what he deserved, things of that kind.

Jeffrey later told Sharonda Posey that he and Harvey and Anderson did it.  And Anderson I think also admitted to killing to Sharonda Posey.  Ezerell Bynum, the three of them told him that they killed Harrigan.  Jeffrey told him that they cut a hole in a gate or a fence and waited to ambush the victim.  And, of course, there was evidence to that effect.  I thought that was significant because how else would Mr. Bynum have that information.

Aaron Pitts, another witness, testified that Jeffrey told him why and how he and others used three different guns to kill Harrigan.  And, of course, that evidence of the use of three weapons Mr. Behe has alluded to.

Omar Dykes, who did not testify, told agents that Jeffrey admitted to him that the three people involved here did that – did the killing, and that the defendant told Dykes to tell Jeffrey not to run his mouth about the killing.

I think all of these facts when put together more than persuade me beyond a reasonable doubt, certainly by a preponderance of the evidence that Harvey

Holland was a participant in drug dealing, and that he and his brother conspired with Anderson and agreed to seek revenge or whatever it was against Mr. Harrigan.

I think it is also true that Jeffrey Holland was the boss of this conspiracy so to speak, but all of the conspirators were involved in this killing. I have no trouble coming to the conclusion that this relevant conduct must be considered in imposing a sentence.

(*Id.* at 7-10).

It is this Court's view that Defendant's conduct warrants consecutive sentences of forty years imprisonment on counts two and five to not only reflect the seriousness of the offense, but also to promote respect for the law and provide just punishment for the offenses themselves. Where Defendant has a sustained history of drug distribution, where he has employed violence as an integral part of his drug distribution, and, most importantly, where he has committed murder in connection with his drug distribution activities, the just punishment, respect for the law, and deterrence of criminal conduct factors of § 3553(a) combine to support a sentence of forty years on count two and forty years on count five for a total of eighty years imprisonment.

Defendant highlights his educational efforts, employment, medical risks, and his family in support of his arguments that he is entitled to a sentence variance of time served. (*See generally* Doc. 545). According to Defendant, he has been unable to obtain a GED due to his "documented learning disability" and because he has "a fourth-grade reading level." (Doc. 545 at 10). Defendant has, however, completed multiple courses offered by the Bureau of Prisons and has maintained employment with the Trust Fund Limited Inmate

30

Computer System as an orderly for several years.  (*Id.* at 10-11; Doc. 546, Ex. D at 1 ("I

took advantage of the many programs this prison had to offer me.")).  Defendant states that

he was treated for prostate cancer in 2017, has been diagnosed with hyperlipidemia, and

contracted COVID-19 while incarcerated.  (Doc. 545 at 12).  Defendant also details the

familial support he has and the willingness of his family to assist with his transition after his

release from prison.  (Doc. 545 at 8-9, 19).  Many family members of Defendant wrote

letters of support explaining the kind of person they believe Defendant to be and the ways in

which they will assist Defendant in the event he is released from prison.  (*See generally*

Doc. 546, Ex. E).

In this Court's view, these factors do not outweigh the murder of Jason Harrigan, the

seriousness the drug trafficking in which he engaged, and his disrespect for the law.

Defendant's post-conviction rehabilitation efforts are commendable but insufficient to

overcome the realities of his drug distribution activities, which involved violence and murder.

In his letter to the Court, Defendant does express some remorse for his actions.  His

remorse, however, appears to be directed solely at his own abuse of drugs, writing:

> Once I got out of Elwyn Institution, I thought I had my life all figure[d] out, but I
> didn't as I started my life of abusing drugs and a lot came with that.  I'm so sorry
> for that.  Your Honor, as I looked back on my life of using drugs I made a big
> fool of myself and my life.  This 18 years I have been incarcerated, made me
> realize that it ain't nothing in this world is more important than my freedom and
> my family.

(Doc. 546, Ex. D at 1).  Defendant characterizes the violence he committed in furtherance of

drug distribution, including the murder of Jason Harrigan, as collateral damage from his

addiction. The violence committed by Defendant was more than an unintended by-product of Defendant's drug abuse and while it may provide added context to his actions, it does not excuse Defendant's participation in drug distribution and drug-related violence and murder.

The record supports the finding that, as part of his distribution activity, Defendant, together with Jeffrey Holland and Shawn Anderson, committed one, and possibly two, murders. As a result, the focus of the 3553(a) inquiry cannot be limited to Defendant's crack addiction and drug distribution, and necessarily encompasses more than Defendant's addiction. The requirements that there be just punishment and that a sentence must be sufficient, but not greater than necessary, to satisfy the factors set forth in § 3553(a) fully justify the sentence of forty years on each of counts two and five. *Concepcion*, 142 S.Ct. at 2401 ("Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion.").

Finally, this Court finds that Defendant is entitled to a sentencing reduction from life imprisonment to a sentence of forty years imprisonment on each of counts two and five, to be served consecutively. Defendant is also subject to a four year term of supervised release on each count of conviction. However, nothing in the record provides a basis for this Court to reduce his sentence below the forty year sentence on each count of conviction required by resentencing under the First Step Act. For the reasons stated above, this sentence is sufficient, but not greater than necessary, to satisfy the factors of 18 U.S.C. § 3553(a). *See Concepcion*, 142 S.Ct. at 2404 ("Section 404(c) of the First Step Act confers

particular discretion, clarifying that the Act does not 'require a court to reduce any sentence.'"); *see also id.* at 2401 ("Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion.").

In *Shields*, the Third Circuit provided district courts with guidance as to how they should decide First Step Act motions, and this Court has followed the recommended process.  The Court determined that Defendant was eligible for relief under the First Step Act (*see supra*, Section III.a) and Probation prepared an addendum to the PSR that addressed Defendant's proper Guidelines calculation.  *Shields*, 2022 WL 371778, at *8 ("First, upon receiving the motion, the court determines whether the defendant is eligible for relief under the statute; second, the court orders the Probation Office to prepare an addendum to the PSR addressing the proper Guidelines calculation[.]").  Next, the Court provided the parties with multiple opportunities to "file memoranda noting any objections to the PSR, discussing the § 3553(a) factors, and attaching any relevant documentation."  *Id.*; (*see also supra*, n.1).  The Court determined that a resentencing hearing was not necessary because it had "sufficient information to decide whether and by how much to reduce [Defendant's] sentence" based on the "record of the original sentencing, along with the arguments of the parties" in relation to the instant § 404(b) motion.  *Shields*, 2022 WL 371778, at *7.

33

Finally, the Court determined that Defendant's sentence should be reduced and determined the appropriate reduction. *Shields*, 2022 WL 371778, at *8 ("[F]ourth, the Court decides whether to reduce the defendant's sentence, and if so, by how much."). In doing so, the Court abided by the directives from the Supreme Court and the Third Circuit. When raised by the parties in a "nonfrivolous argument[ ]," the Court considered "intervening changes of law [and] fact," such as the § 3553(a) factors and Defendant's post-conviction rehabilitation efforts and health challenges. *Concepcion*, 142 S.Ct. at 2396, 2404; *Shields*, 2022 WL 371778, at *4 ("As far as what courts 'may' consider, we had held that they are authorized to take into account, at the time of resentencing, any changed circumstances, 'including post-sentencing developments, such as health issues and rehabilitation arguments, as were raised' by the parties, *Easter*, 975 F.3d at 327, *Murphy*, 998 F.3d at 559. And the Supreme Court in *Concepcion* agreed."). In addressing these "nonfrivolous arguments," the Court abided by the Supreme Court's and Third Circuit's conclusion that "a district court's discretion does not empower it to 'recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act,' as 'the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense.'" *Id.* (quoting *Concepcion*, 142 S.Ct. at 2402 n.6).

As required by the First Step Act, the Court "reasoned through [the parties'] arguments,'" *id.* (quoting *United States v. Maxwell*, 991 F.3d 685, 694 (6th Cir. 2021)), as

demonstrated by the above analysis in this Memorandum Opinion. *See id.* ("When it comes to that reasoned explanation, the First Step Act leaves much [ ] to the judge's own professional judgment." (internal citation and quotation omitted)). However, "[n]othing in the text and structure of the First Step Act expressly, or even implicitly overcomes the established tradition of district courts' sentencing discretion." *Id.* at 2401. Accordingly, through the application of the Fair Sentencing Act, the First Step Act, and the proper exercise of its discretion, the Court determines that Defendant should be resentenced to a term of imprisonment of forty years on count two and a term of forty years imprisonment on count five, for a total of 80 years, in addition to a term of four years supervised release on each of counts two and five.

## IV. CONCLUSION

Based on the foregoing analysis, the Court will grant Defendant's Motion for Resentencing pursuant to Section 404(b) of the First Step Act and will deny Defendant's request for a sentence reduction beyond the relief granted in compliance with the requirements of § 404(b) of the First Step Act.

Robert D. Mariani
United States District Judge

35